Richard B. Goetz (S.B. #115666)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: (213) 430-6000  Fax: (213) 430-6407
rgoetz@omm.com

Amy Laurendeau (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA 92660
Tel: (949) 823-6900  Fax: (949) 823-6994
alaurendeau@omm.com

Hannah Chanoine (*pro hac vice*)
Gerard A. Savaresse (*pro hac vice*)
Jeffrey A. N. Kopczynski (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel: (212) 326-2000  Fax: (212) 326-2061
hchanoine@omm.com
gsavaresse@omm.com
jkopczynski@omm.com

*Attorneys for Defendant*
HILLS PET NUTRITION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| TAMARA MOORE, et al., | Case No. 3:16-CV-07001-MMC |
| Plaintiffs, | **DEFENDANT HILL'S PET NUTRITION, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DEPOSITION AND FOR ADVERSE INFERENCE** |
| v. | |
| MARS PETCARE US, INC., et al., | |
| Defendants. | Date: July 22, 2022<br>Time: 9:00 AM<br>Courtroom: 7<br>Judge: Honorable Maxine M. Chesney |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 26 and 37, on July 22, 2022 at 9:00 AM, or as soon thereafter as counsel may be heard, Defendant Hill's Pet Nutrition, Inc. ("Hill's") will move this Court, before the Honorable Maxine M. Chesney, in Courtroom 7, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, (1) to compel Plaintiff Tamara Moore to produce herself for further deposition regarding her belated document production, for which Hill's did not have an opportunity to examine during her deposition, and (2) order an adverse inference instruction regarding Ms. Moore's spoliation of relevant documents in this matter.  Pursuant to Federal Rule 37(a)(1) and Local Civil Rule 37-1(a), the undersigned counsel for Hill's represents that she has attempted in good faith to confer with Plaintiff's counsel with respect to the subjects of this motion, but that efforts to resolve the dispute without the Court's assistance were unavailing.

Hill's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Hannah Y. Chanoine and Exhibits, all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider.

Dated: June 13, 2022

O'MELVENY & MYERS LLP

By:   _/s/  Hannah Y. Chanoine_
                    Hannah Y. Chanoine

*Attorneys for Defendant*
HILLS PET NUTRITION, INC.

Richard B. Goetz (S.B. #115666)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: (213) 430-6000  Fax: (213) 430-6407
rgoetz@omm.com

Amy Laurendeau (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA 92660
Tel: (949) 823-6900  Fax: (949) 823-6994
alaurendeau@omm.com

Hannah Chanoine (*pro hac vice*)
Gerard A. Savaresse (*pro hac vice*)
Jeffrey A. N. Kopczynski (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel: (212) 326-2000  Fax: (212) 326-2061
hchanoine@omm.com
gsavaresse@omm.com
jkopczynski@omm.com

*Attorneys for Defendant*
HILLS PET NUTRITION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| TAMARA MOORE, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARS PETCARE US, INC., et al.,<br><br>        Defendants. | Case No. 3:16-CV-07001-MMC<br><br>**DEFENDANT HILL'S PET NUTRITION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER DEPOSITION AND FOR ADVERSE INFERENCE**<br><br>Date: July 22, 2022<br>Time: 9:00 AM<br>Courtroom: 7<br>Judge: Honorable Maxine M. Chesney |

1

# TABLE OF CONTENTS

**Page**

2

3   I.      INTRODUCTION ..................................................................................................... 1

4   II.     BACKGROUND ...................................................................................................... 2

5   III.    ARGUMENT ............................................................................................................ 6

6           A.     Hill's is Entitled To Further Depose Ms. Moore Regarding Her

7                  Supplemental Document Production.............................................................. 6

8           B.     Ms. Moore's Conduct Warrants Imposition of an Adverse Inference For

9                  Spoliation of Evidence ................................................................................. 8

    IV.     CONCLUSION ....................................................................................................... 12
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**

**Page**

3

<u>CASES</u>

4

*Akiona v. United States,*
  938 F.2d 158 (9th Cir. 1991)..................................................8

5

*Aramark Management, LLC v. Borgquist,*
  2021 WL 864067 (C. D. Cal. Jan. 27, 2021) ......................9, 11

6

*Bookhamer v. Sunbeam Prod. Inc.,*
  2012 WL 5188302 (N.D. Cal. Oct. 19, 2012).......................6, 7

7

8

*Cervantes v. Zimmerman,*
  2019 WL 1598219 (S.D. Cal. Apr. 15, 2019) ......................2, 8

9

*Colonies Partners, L.P. v. Cnty. of San Bernardino,*
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), *report and recommendation*
  *adopted,* 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) ....................2, 10

10

11

12

*Dixon v. Certainteed Corp.,*
  164 F.R.D. 685 (D. Kan. 1996) ..................................................6

13

*Glover v. BIC Corp.,*
  6 F.3d 1318 (9th Cir. 1993)..................................................8

14

15

*Graebner v. James River Corp.,*
  130 F.R.D. 440 N.D. Cal. 1989) ..................................................6

16

*In re Cathode Ray Tube (Crt) Antitrust Litig.,*
  2015 WL 4451419 (N.D. Cal. July 20, 2015).......................2, 7

17

18

*Infor Glob. Sols. (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.,*
  2009 WL 1421579 (N.D. Cal. May 15, 2009) ..................................................7

19

20

*Martinez v. Equinox Holdings, Inc.,*
  2021 WL 6882152 (C. D. Cal. Oct. 22, 2021). ..................................................12

21

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.,*
  306 F.3d 806 (9th Cir. 2002)..................................................8

22

23

*Nelson v. Millennium Labs., Inc.,*
  2013 WL 11693772 (D. Ariz. June 26, 2013) ..................................................7

24

*Ottoson v. SMBC Leasing & Fin., Inc.,*
  268 F. Supp. 3d 570 (S.D.N.Y. 2017)..................................................10

25

26

*Pax Water Techs., Inc. v. Medora Corp.,*
  2019 WL 12381114 (C.D. Cal. Oct. 15, 2019) ..................................................7

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2                                                                                   **Page**

3   *United States v. Bonadio*,

4        2014 WL 3747303 (D. Conn. July 17, 2014) ........................................................ 2, 8

    *Youngevity v. Smith*,
5        2021 WL 2559456 (S. D. Cal., May 19, 2021) ......................................................... 12

6   *Zubulake v. UBS Warburg LLC*,
7        229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................ 9

8   **RULES**

9   Fed. R. Civ. P. 26(b)(1) ........................................................................................... 6, 7

10  Fed. R. Civ. P. 30(a)(2)(A)(ii) ...................................................................................... 6

11  Fed. R. Civ. P. 37(d)(3) ................................................................................................ 7

12  Fed. R. Civ. P. 37(e) ............................................................................................... 8, 10

13  Fed. R. Civ. P. 37(e)(1) ......................................................................................... 10, 11

14  Fed. R. Civ. P. 37(e)(2) .............................................................................................. 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION[1]**

2         Defendant Hill's Pet Nutrition, Inc. ("Hill's") respectfully requests the Court: (1) compel

3    Plaintiff Tamara Moore to produce herself for further deposition for Hill's to question her about

4    her belated document production, which Hill's did not have an opportunity to examine during her

5    deposition; and (2) order an adverse inference instruction regarding Ms. Moore's spoliation of

6    relevant documents in this matter.

7         Hill's served discovery requests on Ms. Moore on March 19, 2021 (the "First Set of

8    Requests"), nearly one year before Ms. Moore's February 3, 2022 deposition.  On May 27, 2021,

9    Plaintiffs' counsel responded that Ms. Moore had conducted a reasonable search and had no

10   further documents responsive to those requests.  But on February 3, 2022, during Ms. Moore's

11   deposition, Hill's learned that Ms. Moore failed to search her email accounts, and collect or

12   produce several categories of documents and information responsive to Hill's discovery requests.

13   These documents should have been searched for and produced well before her February 3

14   deposition and directly relate to her claims against Hill's.  Ms. Moore testified that she did not

15   know that she was obligated to search her emails for responsive documents in this litigation.

16   (*See, e.g.*, Ex. 6 (Deposition Transcript of T. Moore, Feb. 3, 2022) at 137:16-18.)

17        In addition, Ms. Moore's testimony revealed that not only did she fail to preserve and

18   produce text messages relevant to this action, she actively deleted text message communications

19   with her veterinarians and VCA Animal Hospital regarding their authorization of Prescription

20   Diet for Pugolicious ***during this litigation***.  (*See, e.g., id.* at 225:11-226:3; 226:22-227-10.)

21   Ms. Moore again attempted to excuse her behavior, testifying that she was not aware she had an

22   obligation to preserve such text messages.  (*See, e.g., id.* at 227:19-228:4.)  That is no excuse.

23        While Plaintiffs' counsel has now produced documents from Ms. Moore's email

24   account—including documents related to her pet insurance policy, communications about her pet

25   insurance claims, relevant invoices, and nonprivileged communications about the lawsuit—

26   counsel has refused to reopen the deposition into the withheld documents and ignored Hill's

27   ──────────────

28   [1] Any references to "Ex." herein are to exhibits attached to the June 13, 2022 Declaration of Hannah Y. Chanoine in support of this motion.

1    request for an adverse inference to cure Ms. Moore's spoliation.  Hill's has no other option but to

2    seek relief from the Court to redress Plaintiff's disregard for the discovery process that has

3    substantially prejudiced Hill's in this litigation.

4        *First*, Hill's is entitled to reopen Ms. Moore's deposition to examine her on the responsive

5    documents belatedly produced after her February 3 deposition.  *See, e.g.*, *In re Cathode Ray Tube*

6    *(Crt) Antitrust Litig.*, 2015 WL 4451419, at *3 (N.D. Cal. July 20, 2015) (reopening deposition

7    due to delayed production of relevant discovery responses).  Courts routinely reopen depositions

8    in these exact circumstances.  In addition, Plaintiffs or their counsel should bear the costs of the

9    reopened deposition given Ms. Moore's failure to timely produce responsive information before

10   her deposition.  *See Cervantes v. Zimmerman*, 2019 WL 1598219, at *8 (S.D. Cal. Apr. 15, 2019)

11   (imposing cost-shifting sanctions incurred from a limited reopening of discovery to address

12   untimely disclosed information); *United States v. Bonadio*, 2014 WL 3747303, at *3 (D. Conn.

13   July 17, 2014) (reopening discovery "consistent with Rule 37(c)(1)(A) & (C)" to permit

14   depositions of defendant and third-party witnesses on defendant's untimely disclosed information

15   with "[a]ll expenses of these depositions [to] be borne by defendant").

16       *Second*, Ms. Moore admitted that she engaged in spoliation after commencing this

17   lawsuit, deleting text messages during the litigation that relate directly to the veterinary

18   authorization requirement for Prescription Diet that is at the heart of the subject matter.  Courts

19   may impose an adverse inference instruction for spoliation and such an inference is certainly

20   warranted here regardless of Ms. Moore's alleged ignorance of her duty to preserve relevant

21   evidence.  *See Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *9

22   (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal.

23   Mar. 27, 2020).  Thus, as explained more fully below, Hill's seeks an adverse inference that

24   Ms. Moore received "care instructions" (*i.e.*, dietary and medicinal feeding instructions or

25   guidance) from one or more veterinarians or the veterinary clinic by email and text message

26   following her pet's doctor visits, as supported by the veterinary records.

27   **II.    BACKGROUND**

28       Ms. Moore brought this putative class action against Hill's alleging that she was deceived

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1  by Hill's labeling and packaging of its Prescription Diet pet foods because she believed that the

2  foods were actually medicine or contained drugs.  Compl. ¶ 100 (alleging that the Prescription

3  Diet labels and packaging have a "tendency to mislead consumers . . . [to an] erroneous belief,

4  intentionally induced by Defendants, that Prescription Pet Food is special and different from all

5  other pet foods because it must be or contain an FDA-approved medicine or drug as a result of the

6  prescription requirement"); *id.* ¶ 123 (alleging that "all class members purchased Prescription Pet

7  Food in reliance on and because of the same misrepresentation and unfair and deceptive practice .

8  . . in the absence of which [Plaintiffs] would not have purchased the Prescription Pet Food"); *id.*

9  ¶¶ 143, 150, 154 (alleging Plaintiffs "would not have purchased Prescription Pet Food . . . if facts

10  concerning those products had been known").

11         On March 19, 2021, almost a year before her deposition, Hill's served its First Set of

12  Requests to Ms. Moore.  On May 27, 2021, Ms. Moore responded to those requests (the "Moore

13  Responses"), representing that she conducted a reasonable search and did not have any more

14  responsive documents to several key requests, including documents concerning therapeutic pet

15  foods, her dog Pugolicious, and pet nutrition.  (*See* Ex. 1 (Moore's May 27, 2021 RFP responses)

16  at 2, 5–6, 8–14.)[2]

17         During Ms. Moore's February 3, 2022 deposition, Ms. Moore admitted that she failed to

18  satisfy her basic discovery obligations.  Specifically, she testified that she has responsive

19  information in her email account that was not searched, collected, nor produced, including:

20             •   communications regarding her decision to join and participate in this action

21                 (*compare* Ex. 6 at 135:14-136:10, 144:12-149:25 *with* Ex. 1 at 10, 12 (Moore

22

23  [2] *See, e.g., id.* at RFP Nos. 4 (medical or veterinary records relating to Pugolicious); 6 (medical or veterinary records relating to pets other than Pugolicious); 10 (communications with

24  Pugolicious's veterinarians and staff); 11 (documents and communications concerning any "Therapeutic Pet Foods"); 12 (documents and communications concerning Hill's Prescription

25  Diet foods); 13 (documents and communications concerning Pugolicious); 14 ( "non-privileged" documents and communications regarding any litigation concerning the "Veterinary

26  Authorization Requirement"); 16 (documents and communications concerning Hill's); 18 (documents and communications concerning pet nutrition); 20 (documents relating to

27  participation in the lawsuit); 23 (documents and communications with putative class members regarding the action) 24 (documents and communications with putative class members regarding

28  Hill's Prescription Diet foods).

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1    Responses to RFP Nos. 14 and 20));

2    • her nonprivileged discussions about the case (*compare* Ex. 6 at 135:12-136:23

3    *with* Ex. 1 at 9–11, 13–14 (Moore Responses to RFP Nos. 12, 14, 16, 23, 24));

4    • medical records and/or communications with her veterinarians and VCA Animal

5    Hospital related to her pet Pugolicious (*compare* Ex. 6 at 137:3-18 *with* Ex. 1 at 5–

6    9 (Moore Responses to RFP Nos. 4, 6, 10, 13)); and

7    • relevant purchase records (*compare* Ex. 6 at 137:3-18 *with* Ex. 1 at 6–7, 9 (Moore

8    Responses to RFP Nos. 6, 8, 13)).

9    Notably, Ms. Moore testified that she did not search for or collect any information from her email

10   account because she did not believe it was necessary to do so.  (Ex. 6 at 136:16-23; 137:16-18

11   ("Q. Okay. Why didn't you search that account? A. It wasn't necessary.").)  She also did not

12   recall ever receiving instructions to preserve data.  (*Id.* at 227:19-228:4.)

13   Ms. Moore also testified that she did not preserve text message communications with her

14   veterinarians and VCA Animal Hospital that were related to this case, nor did she search her text

15   messages for this case. (*See, e.g., id.* at 225:11-226:3; 226:22-227-10.)  In fact, she testified

16   that—***during this litigation***—she affirmatively deleted responsive text messages relating to the

17   authorization of Prescription Diet products for Pugolicious.  (*Id*. at 225:23-226:3 ("A. I don't

18   keep a record of text messages.  Q. So do you delete them on your phone after you're done? A. I

19   do."), 227:2-10 ("Q. And you received communications from your veterinarian on your cell

20   phone about u/d food which is the subject of this litigation after you became a named plaintiff in

21   this case; correct?  A. Yes.  Q. And you've deleted those communications; correct? A. Yes.").)

22   Hill's made reasonable efforts to resolve the discovery issues raised during Ms. Moore's

23   deposition by requesting Plaintiff's counsel to (1) conduct a comprehensive search and produce

24   all responsive withheld documents including her emails and text messages; (2) make Ms. Moore

25   available for further deposition regarding the information Hill's never had the opportunity to

26   question her on; and (3) negotiate a reasonable adverse inference stemming from the deleted and

27   unrecoverable text messages.  (*See* Ex. 3 (Mar. 8, 2022, Letter to Plaintiff's Counsel) at 1–3.)  On

28   March 18, 2022, Plaintiffs' counsel stated that they conducted a search of her email account and

4

1   obtained additional responsive documents, but were unable to restore any deleted responsive text

2   messages.  (*See* Ex. 4 (Mar. 18, 2022, Letter to Hill's) at 1–2.)  Plaintiffs' counsel also proposed

3   special interrogatories in lieu of deposition questioning to examine the documents Hill's never

4   had an opportunity to review during the February 3 deposition.  (*See id.* at 2.)

5          On March 22, 2022, Plaintiffs made a supplemental production from her email account

6   that included her Trupanion pet insurance policy,[3] related communications and claims about her

7   policy, relevant veterinary invoices, and certain nonprivileged conversations she had about the

8   lawsuit.  These documents—including those related to her Trupanion pet insurance policy claims

9   that define and distinguish medicine from therapeutic pet foods—are directly material to Ms.

10  Moore's claims against Hill's.  Specifically, they show that as early as 2013, she was on notice

11  that therapeutic pet foods like Hill's Prescription Diet are not medicine and do not contain drugs.

12         On March 30, 2022, Hill's wrote to Plaintiffs' counsel inquiring whether the supplemental

13  production was complete (given, for instance, that Ms. Moore had preserved various emails

14  dating back to 2013, but failed to include more recent emails from her veterinarians).  (Ex. 5

15  (Mar. 30, 2022, Letter to Plaintiff's Counsel) at 1–3.)[4]  Hill's also stated that special

16  interrogatories are not an adequate substitute for deposition testimony because Hill's would have

17  ─────────────────────
    [3] On January 14, 2022, Hill's served two additional requests for production regarding any pet

18  insurance policies Ms. Moore may have had during the relevant time period.  While such
    documents should have been produced in response to the Hill's first set of requests—specifically

19  in response to RFP Nos. 11, 13, and 18 (*supra* n.2)—Hills's made the two additional requests out
    of an abundance of caution and without prior knowledge that Ms. Moore had failed to search her

20  emails for responsive documents.  On February 15, 2022, Plaintiff's counsel made a small
    production of documents—some of which were from Ms. Moore's email account—relating to her

21  pet insurance policy and submitted claims.  *See* Ex. 2 (Moore's Feb. 15, 2022 RFP responses).
    This was not a complete production with respect to Hill's first or second sets of requests.  On

22  March 22, 2022, after representing to Hill's that Plaintiff and Plaintiff's counsel conducted a
    search of Ms. Moore's email account, Plaintiff's counsel produced additional documents

23  including from Ms. Moore's email account regarding her pet insurance policy, communications
    related to pet insurance claims, relevant veterinary invoices, and nonprivileged communications

24  about the lawsuit.  These documents could and would have been produced if Ms. Moore had
    conducted a search of her emails in response to Hill's first set of requests.

25  [4] For example, veterinary records produced in this litigation mention Dr. Jasmine Morris's "Email
    with food recommendations" from July 18, 2016.  *See* Ex. 9 (VCA Lewelling Animal Hospital

26  records) at HILLS_VCA_000043.  But the production includes no emails from Dr. Morris at all,
    nor any additional more-recent nonprivileged emails or text messages with individuals (such as

27  Mr. Prince Damons) with whom she testified that she had discussed the subject matter of the
    litigation.  Hill's provided Plaintiffs' counsel with additional potential search terms to aid in that

28  search.

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1  examined Ms. Moore about the supplemental production (such as her Trupanion insurance policy)

2  had Hill's received this information before the deposition.  (Ex. 5 at 2–3.)[5]  Hill's further

3  reiterated its position regarding Ms. Moore's spoliation of responsive text messages, and

4  proposed that the parties stipulate to an inference that Ms. Moore received care instructions from

5  one or more veterinarians or the veterinary clinic by email and text message following

6  Pugolicious's doctor visits.  (Ex. 5 at 2.)  Plaintiffs' counsel rejected further deposition regarding

7  the supplemental production and Hill's stipulation-offer.

8  **III.    ARGUMENT**

9       **A.    Hill's is Entitled To Further Depose Ms. Moore Regarding Her Supplemental**

10          **Document Production**

11          Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery

12  regarding any nonprivileged matter that is relevant to any party's claim or defense and

13  proportional to the needs of the case, considering the importance of the issues at stake in the

14  action, the amount in controversy, the parties' relative access to relevant information, the parties'

15  resources, the importance of the discovery in resolving the issues, and whether the burden or

16  expense of the proposed discovery outweighs its likely benefit."  A party must seek leave of the

17  Court to conduct a deposition "if the parties have not stipulated to the deposition" and "the

18  deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii).  "Whether

19  to reopen a deposition lies within the court's discretion." *Bookhamer v. Sunbeam Prod. Inc.*,

20  2012 WL 5188302, at *2 (N.D. Cal. Oct. 19, 2012); *Dixon v. Certainteed Corp.*, 164 F.R.D. 685,

21  690 (D. Kan. 1996).  A court may reopen a deposition where there is a "showing of a need or

22  good reason for doing so." *Dixon*, 164 F.R.D. at 690; *Graebner v. James River Corp.*, 130 F.R.D.

23  440, 441 N.D. Cal. 1989); *Bookhamer*, 2012 WL 5188302, at *2.

24          Ms. Moore's supplemental production included documents that are responsive to Hill's

25  initial discovery requests and are directly relevant to her claims against Hill's.  Among other

26  ─────────────────────

27  [5] In fact, Ms. Moore testified that she did not remember ever seeing her May 27, 2021 written
interrogatory responses (despite signing a verification on May 26, 2021 that her interrogatory
responses are true and correct under penalty of perjury).  *See* Ex. 6 at 47:25-48:4 ("It does not

28  look familiar"), 50:24-51:3 ("I don't remember seeing this [interrogatory responses]").

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1    things, the production includes her Trupanion pet insurance policy and related documents and

2    communications, as well as nonprivileged conversations she had about the lawsuit.  Had these

3    documents been produced before, Hill's would have examined them during Ms. Moore's

4    February 3 deposition.  Hill's is entitled under Federal Rule 26(b)(1) to obtain discovery

5    regarding these material documents, including through further deposition.  It is within this Court's

6    discretion to reopen Ms. Moore's deposition as redress for Ms. Moore's failure to timely produce

7    these documents.  *See* Fed. R. Civ. P. 37(d)(3); *Bookhamer*, 2012 WL 5188302, at *2.

8         Courts reopen depositions where parties belatedly produce material documents or disclose

9    material information within their possession.  *See, e.g., In re Cathode Ray Tube (Crt) Antitrust*

10   *Litig.*, 2015 WL 4451419, at *3 (reopening deposition where the "delayed production of relevant

11   discovery responses prevented [a party] from conducting the full scope of their examinations of

12   [witnesses] with information to which they were entitled under the federal discovery rules");

13   *Nelson v. Millennium Labs., Inc.*, 2013 WL 11693772, at *1 (D. Ariz. June 26, 2013) (reopening

14   deposition of witness who initially stated she did not have responsive documents and belatedly

15   produced thumb drive); *Pax Water Techs., Inc. v. Medora Corp.*, 2019 WL 12381114, at *2 (C.D.

16   Cal. Oct. 15, 2019) (finding good cause to reopen deposition based on the belated production of

17   documents).

18        Here, Ms. Moore's deposition testimony makes clear that she had the relevant documents

19   in her possession at the time of her initial document productions, but that she simply ***did not***

20   ***search her email accounts***.  (*See* Ex. 6 at 136:16-23; 137:16-18 ("Q. Did you search your Yahoo

21   account for communications about this case with your friend? A. I did not do a search. Q. Did you

22   search your e-mail, that e-mail at all in connection with this case? A. No.").)  As a litigant, Ms.

23   Moore (or her counsel) should have conducted a reasonable search for documents responsive to

24   discovery requests (which her counsel indicated she did in May 27, 2021).  *See Infor Glob. Sols.*

25   *(Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 1421579, at *2 (N.D. Cal. May 15,

26   2009).  And the supplemental production is directly material to her claims against Hill's:  those

27   documents show that Ms. Moore understood a distinction between medicine and therapeutic pet

28   food as early as 2013—years before bringing this this action where she alleges that she was

1    *misled* into believing that Prescription Diet contained medicine, and indeed she **kept on buying**

2    **Prescription Diet** after receiving this information—refuting her allegation that she never would

3    have purchased the food had she known the "truth."  Allowing Ms. Moore's purported ignorance

4    of her discovery obligations to prevent Hill's from fully examining her on this critical subject—

5    particularly where she is represented by counsel—would be unduly prejudicial to Hill's.

6    Moreover, interrogatories are an inadequate substitute for deposition here because Hill's would

7    have examined Ms. Moore about the supplemental production (*e.g.*, her Trupanion insurance

8    policy) had Hill's received this information earlier.  *Supra* at p. 6 & n.5.

9           Further, Plaintiffs should bear the costs of the reopened deposition, given that Ms. Moore

10   withheld responsive documents and information that were readily available long before her

11   deposition.  *See Cervantes*, 2019 WL 1598219, at *8 (imposing cost-shifting sanctions incurred

12   from a limited reopening of discovery to address untimely disclosed information); *Bonadio*, 2014

13   WL 3747303, at *3(reopening discovery "consistent with Rule 37(c)(1)(A) & (C)" to permit

14   depositions of defendant and third-party witnesses on defendant's untimely disclosed information

15   with "[a]ll expenses of these depositions [to] be borne by defendant").

16           **B.    Ms. Moore's Conduct Warrants Imposition of an Adverse Inference For**
17                   **Spoliation of Evidence**

18           "A federal trial court has the inherent discretionary power to make appropriate evidentiary

19   rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab. Mgmt.*

20   *Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir. 2002) (citing *Glover v. BIC Corp.*, 6

21   F.3d 1318, 1329 (9th Cir. 1993)).  "This power includes the power to sanction the responsible

22   party by instructing the jury that it may infer that the spoiled or destroyed evidence would have

23   been unfavorable to the responsible party."  *Id.*; *see Akiona v. United States*, 938 F.2d 158, 161

24   (9th Cir. 1991).  An adverse inference instruction is a widely accepted sanction for spoliation and

25   is appropriate in this case.

26           Under Federal Rule 37(e), spoliation occurs when a party (1) fails to take reasonable steps

27   to preserve ESI, (2) that party was aware of or could reasonably anticipate litigation, and (3) the

28

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1   lost information "cannot be restored or replaced through additional discovery." *See, e.g.*,

2   *Aramark Management, LLC v. Borgquist*, 2021 WL 864067, at *12-13 (C. D. Cal. Jan. 27, 2021).

3   All these conditions have been met.  Ms. Moore was inarguably aware that the litigation had

4   already begun when she actively deleted the text messages.  (*See, e.g.,* Ex. 6 at 226:12-25, 227:2-

5   10.)  Moreover, Ms. Moore has not provided any indication that the text messages can be restored

6   or replaced through additional discovery.  (*See, e.g., id.* at 225:23-226:3.)[6]

7         Indeed, Ms. Moore not only failed to take reasonable steps to preserve ESI, she actively

8   deleted the text messages.  While Ms. Moore has testified that she was unaware of her obligation

9   to preserve text messages with her veterinarians and veterinary clinic, that is of no issue.  There

10   can be no doubt that Ms. Moore was on notice that her own text messages ***with*** her veterinarian

11   ***about the Prescription Diet products*** at issue in her lawsuit against Hill's were at least potentially

12   related to said lawsuit—including but not limited to communications she had after commencing

13   litigation.  (*See* Ex. 6 at 227:2-10 ("Q. And you received communications from your veterinarian

14   on your cell phone about u/d food which is the subject of this litigation after you became a named

15   plaintiff in this case; correct?  A. Yes.  Q. And you've deleted those communications; correct? A.

16   Yes.").)  It strains credulity for Ms. Moore to argue otherwise.

17         Further, Plaintiffs' counsel was obligated to instruct her to preserve evidence, including

18   text messages related to this action.  *See, e.g., Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422,

19   432-33 (S.D.N.Y. 2004) ("Counsel must oversee compliance with the litigation hold, monitoring

20   the party's efforts to retain and produce the relevant documents. . . . Once a party and her counsel

21   have identified all of the sources of potentially relevant information, they are under a duty to

22   retain that information . . . and to produce information responsive to the opposing party's

23   requests.").  Despite this clear obligation, Ms. Moore testified that she does not recall ever

24   receiving instructions to preserve data.  (*See* Ex. 6 at 227:19-228:4 ("Q. Okay. Did you have any

25

26   [6] Hill's has also served third-party discovery requests to Ms. Moore's veterinary clinics.
     Productions from the veterinary clinics documented a few text messages that Ms. Moore received
27   from the veterinary clinics regarding her Prescription Diet products order, but the productions did
     not document or otherwise restore any of Ms. Moore's deleted text communications with
28   veterinarians.

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1   understanding that you were supposed to hang onto documents relating to your decisions to

2   protest or around the subject matter of this litigation?  A. Not as a text message, no.  Q. How

3   about any other communication?  A. I don't remember any directive about that.").)

4        Once spoliation has been established, Rule 37(e) provides for two tiers of sanctions.  First,

5   if the spoliation was "intend[ed] to deprive another party of the information's use in the

6   litigation," the court may impose more severe sanctions, including an adverse inference or default

7   judgment.  Fed. R. Civ. P. 37(e)(2).  Second, if the spoliation prejudiced another party, the court

8   "may order measures no greater than necessary to cure the prejudice[.]"  Fed. R. Civ. P. 37(e)(1).

9        Ms. Moore's spoliation was intended to deprive Hill's of the information contained in the

10   text messages, therefore an adverse inference is appropriate in this case.  *See* Fed. R. Civ. Proc.

11   37(e)(2).  Courts can infer intent to deprive an adverse party of information from the intentional

12   destruction that occurred here.  *See Colonies Partners, L.P.*, 2020 WL 1496444, at *9 (stating that

13   a party's conduct satisfied Rule 37(e)(2)'s "intent requirement where the evidence shows or it is

14   reasonable to infer that the party purposefully destroyed evidence to avoid its litigation

15   obligations.") (internal quotations and citations omitted).  In *Colonies Partners, L.P.*, the court

16   found that defendant intended to deprive production to plaintiffs when, after litigation

17   commenced, he deleted text messages and an email account pertaining to the litigation.  *Id.* at 10;

18   *see also Ottoson v. SMBC Leasing & Fin., Inc*., 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017)

19   (ordering an adverse inference where the evidence showed that (1) communications existed; (2)

20   Plaintiff failed to take reasonable steps to preserve those communications; and/or (3) Plaintiff

21   failed to produce said communications in violation of her discovery obligations).  Similarly here,

22   Ms. Moore deleted relevant text messages regarding the authorization of Prescription Diet

23   products for her pet *after* she filed the lawsuit, which is ample grounds for an inference that she

24   intentionally deprived Hill's of such information.  *Cf id.* ("The logical inferences that can be

25   drawn from these facts are that Plaintiff: (a) intentionally deleted the [texts]; (b) did not

26   intentionally take any steps to preserve those [texts]; or (c) still has those emails in her possession

27   but has failed to produce them. Any of these scenarios satisfies the requisite level of intent

28   required by Federal Rule of Civil Procedure 37(e).").

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1    As Hill's proposed to Plaintiffs' counsel, a possible adverse inference here could be that

2    Ms. Moore received care instructions by email and text from one or more veterinarians following

3    Pugolicious's doctor visits and medical exam on a particular date, and that she received additional

4    similar care instructions from one or more veterinarians via email and text after other doctor

5    visits, as reflected in and supported by the records.[7]

6    Even if Ms. Moore did not intentionally deprive Hill's of the information, sanctions are

7    appropriate so long as the spoliation prejudiced Hill's.  *See* Fed. R. Civ. Proc. 37(e)(1).  When a

8    party intentionally deletes ESI, the burden shifts to that party to show that the loss of information

9    is not prejudicial to the other party.  *Aramark Management, LLC v. Borgquist*, 2021 WL 864067,

10   at *12-13 (C. D. Cal. Jan. 27, 2021).  Moreover, evidence that the lost documents were relevant is

11   a strong indication that there was prejudice to the party deprived of those documents.  *Id.* at *12.

12   The evidence Ms. Moore did produce, as well as her deposition testimony, shows that the

13   deleted text messages are relevant to her claims.  Ms. Moore testified that VCA Animal Hospital

14   "did start using a text message system" to communicate with clients about their pets.  (Ex. 6 at

15   225:16-17.)  She also testified that she "received communications from [her] veterinarian on [her]

16   cell phone about u/d food which is the subject of this litigation."  (*Id.* at 227:2-5.)  These text

17   messages may have included *inter alia* information reflecting Ms. Moore's knowledge about

18   therapeutic diets or Prescription Diet foods, questions or conversations she had about alleged

19   beliefs about the foods' content, and or information from veterinarians clarifying [or

20   contradicting] her alleged beliefs or claims about the foods' content.  Further, the text messages

21   between Ms. Moore and her veterinarians that *were* produced in this litigation are clearly relevant

22   to her claims.  For example, VCA Animal Hospital's document production includes

23   communication logs showing an "SMS/text" to Ms. Moore reading, in part, "we have Pugo's

24   
25   
26   
27   
28   

---

[7] *See, e.g.,* Ex. 8 (Dec. 5, 2016 care instructions); Ex. 9 at HILLS_VCA_000043 (Dr. Morris's "email with food recommendations" following Pugolicious's July 16, 2016 doctor visit); Ex. 7 (VCA Crocker Animal Hospital records) at Plaintiffs_00000145-147 (veterinary records reflecting Pugolicious's diet history and prescribed medications "hydrocodone" and "marbofloxacin" following May 21, 2017 doctor visit and medical exam); Ex. 10 (veterinary records showing Willow's Sep. 9, 2016 doctor visit and medical exam, reflecting ordered pain medicine "to go Home," such as "Tramadol"); Ex. 11 (care instructions following Willow's Sep. 9, 2016 doctor visit, referencing directions for taking "Tramadol").

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC

1    prescription u/d food here and ready for you to pick up." (Ex. 9 (VCA Lewelling Animal

2    Hospital records) at HILLS_VCA_000034.) The evidence clearly supports the reasonable

3    assumption that Ms. Moore's text message communications with her veterinarians include

4    communications about Prescription Diet, and therefore relate directly to her claims against Hill's.

5         Because Ms. Moore's spoliation prejudiced Hill's, Hill's is entitled to sanctions.

6    Rule 37(e)'s remedy of "measures no greater than necessary to cure the prejudice" permits the

7    Court wide latitude to determine the appropriate sanctions. For example, one court permitted

8    additional deposition time at the expense of the party that was responsible for the spoliation.

9    *Martinez v. Equinox Holdings, Inc.*, 2021 WL 6882152, at *4 (C. D. Cal. Oct. 22, 2021).

10   Sanctions under Rule 37(e)(1) often include monetary sanctions against the party who destroyed

11   the relevant ESI and attorney's fees "incurred as a result of the spoliation." *See, e.g.*, *Youngevity*

12   *v. Smith*, 2021 WL 2559456, at *1 (S. D. Cal., May 19, 2021). Thus, sanctions against Ms.

13   Moore—including an adverse inference—are warranted for her spoliation of relevant evidence.

14   **IV.    CONCLUSION**

15        For the foregoing reasons, Hill's respectfully requests that the Court grant this Motion,

16   compel Ms. Moore to produce herself for further deposition, and impose an adverse inference

17   instruction regarding Ms. Moore's spoliation of evidence.

18        Dated: June 13, 2022                    O'MELVENY & MYERS LLP

19                                                By:  */s/ Hannah Y. Chanoine*

20                                                      Hannah Y. Chanoine

21                                                *Attorneys for Defendant*
                                                  HILLS PET NUTRITION, INC.

22

23

24

25

26

27

28

MEMORANDUM OF POINTS
AND AUTHORITIES
3:16-CV-07001-MMC