| | |
|---|---|
| Michael A. Kelly (CA State Bar #71460) <br> mkelly@walkuplawoffice.com <br> Matthew D. Davis (CA State Bar #141986) <br> mdavis@walkuplawoffice.com <br> WALKUP, MELODIA, KELLY <br> & SCHOENBERGER <br> 650 California Street, 26th Floor <br> San Francisco, California 94108-2615 <br> Telephone: (415) 981-7210 <br> Facsimile: (415) 391-6965 | Daniel Shulman (MN State Bar #100651) <br> dan@shulmanbuske.com <br> SHULMAN & BUSKE PLLC <br> 126 North Third Street, Suite 401 <br> Minneapolis, Minnesota 55401 <br> Telephone: (612) 870-7410 <br> Facsimile (612) 870-7462 <br> *Admitted Pro Hac Vice* |
| Michael L. McGlamry (GA State Bar #492515) <br> mmcglamry@pmkm.com <br> Wade H. Tomlinson III (GA State Bar #714605) <br> triptomlinson@pmkm.com <br> Kimberly J. Johnson (GA State Bar #687678) <br> kimjohnson@pmkm.com <br> *Admitted Pro Hac Vice* <br> Caroline McGlamry (CA State Bar #308660) <br> carolinemcglamry@pmkm.com <br> POPE MCGLAMRY, P.C. <br> 3391 Peachtree Road, NE, Suite 300 <br> Atlanta, Georgia 30326 <br> Telephone: (404) 523-7706 <br> Facsimile: (404) 524-1648 | Lynwood P. Evans (NC State Bar #26700) <br> lpe@wardandsmith.com <br> Edward J. Coyne III (NC State Bar #33877) <br> ejcoyne@wardandsmith.com <br> Jeremy M. Wilson (NC State Bar #43301) <br> jw@wardandsmith.com <br> WARD AND SMITH, P.A. <br> 127 Racine Drive <br> Wilmington, North Carolina 28403 <br> Telephone: (910) 794-4800 <br> Facsimile: (910) 794-4877 <br> *Admitted Pro Hac Vice* |

**ATTORNEYS FOR PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA MOORE, GRETA L. ERVIN, RAFF ARANDO, NICHOLS SMITH, RENEE EDGREN, and CYNTHIA WELTON on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARS PETCARE US, INC.; ROYAL CANIN U.S.A., INC.; and HILL'S PET NUTRITION, INC.; <br><br> Defendants. | Case No. 3:16-cv-7001-MMC <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT HILL'S PET NUTRITION, INC.'S MOTION TO COMPEL FURTHER DEPOSITION AND FOR ADVERSE INFERENCE** <br><br> *Filed concurrently with DECLARATION OF MATTHEW D. DAVIS* <br><br> Date: July 22, 2022 <br> Time: 9:00 AM <br> Courtroom: C <br> Judge: Hon. Magistrate Judge Sallie Kim <br><br> **Action Filed: 12/07/16** <br> **Trial Date:** |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | RELEVANT BACKGROUND | 1 |
| II. | DISCUSSION | 2 |
| | A. Hill's has not met its burden of establishing a need or good cause to reopen Ms. Moore's deposition. | 2 |
| |     1. Applicable law | 2 |
| |     2. Documents relating to two other dogs adopted by Ms. Moore have no relevance to this case | 2 |
| |     3. The pet insurance documents | 3 |
| |     4. Pugalicious's vet records | 4 |
| |     5. Ms. Moore's communications with the dog's prior owner | 5 |
| | B. Hill's is not entitled to an adverse inference | 7 |
| |     1. Legal principles | 7 |
| |     2. The deleted text messages are not "lost" as Hill's received copies of them in the VCA records produced by Ms. Moore and VCA | 9 |
| |     3. Hill's suffered no prejudice, as required by Rule 37(e)(1). | 9 |
| |     4. There is no evidence that Ms. Moore acted with intent to deprive Hill's of the information in the deleted text messages, as required by Rule 37(e)(2). | 10 |
| III. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

                                                                           **Page**

**CASES**

Al Otro Lado, Inc. v. Mayorkas, No. 19-CV-01344-BAS-MSB, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021); ................................................................. 8

Al Otro Lado, Inc. v. Wolf, No. 3:17-CV-02366-BAS-KSC, 2021 WL 631789 ............... 8

Bookhamer v. Sunbeam Prod. Inc., No. C 09-6027 EMC DMR, 2012 U.S. Dist. LEXIS 151010, 2012 WL 5188302, at *2 (N.D. Cal. Oct. 19, 2012) ..................... 2

Colonies Partners, L.P. v. Cty. of San Bernardino, No. 518CV00420JGBSHK, 2020 WL 1496444 ........................................................................... 10, 11

Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1054 (S.D. Cal. 2015) ....................................................................... 8

Dixon v. Certainteed Corp., 164 F.R.D. 685, 690 (D. Kan. 1996) .................................. 2

Graebner v. James River Corp., 130 F.R.D. 440, 441 N.D. Cal. 1989) ......................... 2

In re Cathode Ray Tube (Crt) Antitrust Litigation, (N.D. Cal., July 20, 2015, No. 3:07-CV-05944SC) 2015 WL 4451419 ..................................................... 6

Living Color Enters., Inc. v. New Era Aquaculture, Ltd., No. 14-CV-62216, 2016 WL 1105297 ................................................................................... 9

Oracle Am., Inc. v. Hewlett Packard Enter. Co., 328 F.R.D. 543, 554 (N.D. Cal. 2018) ......................................................................................... 7

Pax Water Technologies, Inc. v. Medora Corporation (C.D. Cal., Oct. 15, 2019, No. CV189143JAKAGRX), 2019 WL 12381114 ................................................ 2

Porter v. City & Cty. of San Francisco, No. 16-CV-03771-CW(DMR), 2018 WL 4215602 ................................................................................... 8

Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 631 (C.D. Cal. 2013). ................... 8

**STATUTES**

21 U.S.C. § 321(g)(1)(B) .......................................................................................... 4

**RULES**

Fed. R. Civ. P. 30(a)(2)(A)(ii) ................................................................................... 2

Fed. R. Civ. P. 37 .................................................................................................... 7

Fed. R. Civ. P. 37(e)(1) .................................................................................. 7, 8, 9, 10

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

3
PLAINTIFF'S OPP TO HILL'S MTC - CASE NO. 3:16-cv-7001-MMC

Fed. R. Civ. P. 37(e)(2) .................................................................................................8, 9, 10

Fed. R. Civ. P. 37(e).........................................................................................................7, 8, 9

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Plaintiff Tamara Moore opposes Hill's motions to compel the reopening of her deposition and for an adverse inference.

## I. RELEVANT BACKGROUND

This court summarized the claims in this case as thus:

> Plaintiffs are six California pet owners who purchased prescription pet food manufactured by defendants. (See Second Amended Class Action Compl. ("SAC") ¶ 16.) In the operative complaint, the SAC, plaintiffs allege defendants' "self-created requirement of a veterinarian's signed prescription as a condition precedent to the purchase" of their prescription pet food "misleads purchasers and consumers by communicating to them that such food is approved by" the Food and Drug Administration ("FDA"), "has been subject to government inspection and testing, and has medicinal and drug properties that legally require a prescription for sale" (see SAC ¶ 11), thereby causing consumers to "overpa[y] and ma[ke] purchases they otherwise would not have made in the absence of" the prescription requirement (see SAC ¶ 16). (Dckt. 184 [Order Granting Plaintiffs' Motion for Partial Summary Judgment] at pp. 1-2.)

Ms. Moore is one of the plaintiffs. The allegations relevant to her are:

> She has a dog named Pugalicious. When Pugalicious had to undergo surgery to remove kidney stones, Ms. Moore received a prescription from Pugalicious's veterinarian… for Hill's Prescription Diet u/d dog food, which she purchased first from a VCA Animal Hospital and subsequently from PetSmart. This food is a Prescription Pet Food. Ms. Moore was told by her veterinarian that a prescription was required before she could purchase the product. She tried to purchase the product at another VCA Animal Hospital, but was refused because she failed to present a prescription. She also understood from PetSmart that a prescription was required in order to purchase the Prescription Pet Food. When she purchased the product at PetSmart, the product was shelved out on the floor in a section separate and apart from the non-prescription pet food. (SAC at ¶ 101.)

Pugalicious passed away in February of 2018. (Exhibit A [Moore deposition] at 43:10-20.)[1]

---

[1] All referenced exhibits are to the accompanying Declaration of Matthew D. Davis.

1

PLAINTIFF'S OPP TO HILL'S MTC - CASE NO. 3:16-cv-7001-MMC

## II. DISCUSSION

**A. Hill's has not met its burden of establishing a need or good cause to reopen Ms. Moore's deposition.**

**1. Applicable law**

A case cited by Hill's sets forth the applicable law:

> A party must seek leave of the Court to conduct a deposition "if the parties have not stipulated to the deposition" and "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). "Whether to re-open a deposition lies within the court's discretion." Bookhamer v. Sunbeam Prod. Inc., No. C 09-6027 EMC DMR, 2012 U.S. Dist. LEXIS 151010, 2012 WL 5188302, at *2 (N.D. Cal. Oct. 19, 2012); Dixon v. Certainteed Corp., 164 F.R.D. 685, 690 (D. Kan. 1996). Although renewed depositions are generally disfavored, a court may re-open a deposition where there is a "showing of a need or good reason for doing so." Dixon, 164 F.R.D. at 690; Graebner v. James River Corp., 130 F.R.D. 440, 441 N.D. Cal. 1989); Bookhamer, 2012 U.S. Dist. LEXIS 151010, 2012 WL 5188302, at *2.

Pax Water Technologies, Inc. v. Medora Corporation (C.D. Cal., Oct. 15, 2019, No. CV189143JAKAGRX), 2019 WL 12381114, at *1 (good cause to reopen 30(b)(6) deposition after defendant produced 600 new documents, including critical drafts).

But Hill's did not include a single document from that production in support of the motion. It thus failed to provide evidentiary grounds for the order it seeks.

**2. Documents relating to two other dogs adopted by Ms. Moore have no relevance to this case**

In addition to Pugalicious, Ms. Moore adopted two other dogs, Willow and Falkor. (Exhibit A at 44:19-45:2.) She did not purchase prescription pet food for them. Documents relating to those dogs were included in her supplemental production at Hill's insistence. Thus, much of the production post-dates Pugalicious's death and relates to Willow and Falkor. (Exhibit B [entire supplemental production] at Plaintiffs_000011179-1366, 00001386-1470, 00001495-1525, 00001549-1557, 00001722-1725.)[2] Those documents, appointment notices, spam, and invoices, have

---

[2] Exhibit B is Ms. Moore's entire supplemental production. Her counsel, mindful of the court's limited time and resources, does not ask the court to review all of these

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

nothing to do with any issues in the case. There are no grounds to depose Ms. Moore on these documents.

### 3. The pet insurance documents

Hill's argues it needs to depose Ms. Moore about documents that relate to the "Trupanion" pet insurance policy she once carried.

As a threshold matter, Hill's never asked that Ms. Moore produce pet insurance documents before her February 3, 2022 deposition. Hill's makes a footnote argument that she should have them in response to RFP nos. 11, 13 and 18. (Dckt. 206 at n. 3, 5:18-20.) However, those broadly phrased requests did not ask for pet insurance documents. RFP no. 11 asked for "All Documents and Communications concerning any Therapeutic Pet Foods, including social media posts or Communications," no. 13 sought "All Documents and Communications concerning Pugalicious, including social media posts," and no. 18 requested "All Documents and Communications concerning pet nutrition." (Dckt. 206-2 at pp. 8, 9 & 11.) Hill's follow-up requests did ask for pet insurance documents, and she timely produced them. (Dckt. 206-3.) However, her responses came due well after her deposition.

Substantively, while Hill's contends that the pet insurance documents show "that as early as 2013, she was on notice that therapeutic pet foods like Hill's Prescription Diet are not medicine and do not contain drugs" (Dckt. 206 at 5:5-12), but it fails to identify any document that put her on notice of these facts. That is because none can fairly be so read. The Trupanion documents include emails, policies, declaration pages, claim forms and other documents pertaining to an insurance policy that Ms. Moore discontinued in September 2013. (Exhibit B at

---

documents. This opposition makes specific reference to only a few. She produces the entire production because Hill's makes contentions about her litigation conduct and that of her counsel. A review of the entire supplemental production shows that they are almost entirely either duplicative of what was already produced, or completely irrelevant to the claims and defenses in this case. Moreover, including them gives Hill's the opportunity in its reply to do what it failed to do in its opening brief: identify specific documents that support these motions.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Plaintiffs_00001125-1159, 00001714-1723.) None say that prescription pet foods are not a medicine and do not contain drugs.

In fact, the Trupanion policy states that it will cover therapeutic pet food when "recommended and dispensed by [a] veterinarian in the *treatment of injuries or symptomatic illnesses*". [Exhibit B at Plaintiffs_00001127 at p. 5] (emphasis added). This reference to therapeutic pet food closely resembles the Food Drug and Cosmetic Act's definition of a drug. *See* 21 U.S.C. § 321(g)(1)(B)(defining a "drug" as: "articles intended for use in the diagnosis, cure, mitigation, *treatment,* or prevention of *disease* in man or other animals") (emphasis added). In light of this similarity, if any assumption can be made about prescription pet food from the Trupanion Policy, it would be that prescription pet food contains a "drug", rather than the contrary assumption suggested by Hill's. In any event, Ms. Moore never made a claim under the Trupanion policy for the Hill's prescription pet food that her dog's vet prescribed.

In sum, there is no need or good cause to order Ms. Moore to be deposed about the pet insurance documents because (1) Hill's did not request them before her deposition, and (2) the documents do not say what Hill's contends they say.

### 4. Pugalicious's vet records

Hill's obtained from both Ms. Moore and VCA all of Pugalicious's vet records before Ms. Moore's deposition. Hill's questioned her extensively about them. (Exhibit A at 185:7-16, 196:25-198:7, 229:2-230:11, 295:9-22 and Exhibit C [collectively, Exhibits 29, 30, 31 and 34 to Moore deposition].)

Ms. Moore's supplemental production includes about 100 cover emails from VCA with an electronic copy of each separate entry for Pugalicious. (Exhibit B at Plaintiff_00001471-1494, 00001526-1548, 00001597-1709.) The verbatim substance of these records was obtained by Hill's before Ms. Moore's deposition. Nothing new pertaining to prescription pet food is contained in records. Since Hill's had all of these relevant vet records at the time it deposed Ms. Moore–and questioned her about them–there is no need or good cause to order her to again testify on these records.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

4
PLAINTIFF'S OPP TO HILL'S MTC - CASE NO. 3:16-cv-7001-MMC

**5. Ms. Moore's communications with the dog's prior owner**

Ms. Moore adopted Pugalicious from her friend Prince Damons. Later, Mr. Damons informed her about this possible lawsuit. Hill's questioned her about what he told her. (Exhibit A [Moore deposition] at 139:11-143:10.)

> Q. What exactly did he and you talk about with respect to this litigation?
>
> A. He mentioned that he knew of someone who knew about the pending litigation and asked if I wanted more information.
>
> Q. Okay. And did he say at the time -- how did he characterize the litigation?
>
> A. Just that it was in regards to prescription pet food.
>
> Q. Okay. Did he explain what the theory of the litigation was about prescription pet food?
>
> A. No. [Id. At 141:11-25.]

Ms. Moore's supplemental production included email correspondence between her and Mr. Damon about Pugalicious concerning things such as a bug bite or a cute video of the dog. (Exhibit B at Plaintiff_00001160-1166.) The production also included an internal email from her counsel's firm that a staff member forwarded to Mr. Damon, who then forwarded it to Ms. Moore before she retained the firm. (Plaintiff_00001726-1727.) The firm's original email, dated September 21, 2016, said in relevant part:

> [We] are looking at a possible case involving violations of the consumer legal remedies act as it relates to so-called "prescription" pet food. We're looking for people who have purchased, or continue to purchase, "prescription" pet food for a dog or cat. There are basically four brands, and the manufacturers require a veterinarians prescription in order to buy the food. The food is much more expensive than regular pet food made by the same manufacturers.
>
> So if anyone here knowns someone with a dog or cat that has a diet limited to "prescription" pet food, and that person might be willing to be a plaintiff in a potential action against the manufacturers, we would love to talk to them.
>
> As a lead plaintiff in such a case, there involvement is as a

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

> representative of a larger group or class. They will be
> entitled to make a recovery in the case, and their
> involvement will be modest.

A month later a law firm staff member forwarded the email to Mr. Damons with the following caution: "Read below but don't respond to that email (I can get in trouble for fwd inter office emails). Call the handling attorney to get more information." Mr. Damons forwarded the string to Ms. Moore, who responded on November 16, 2016: "I am definitely interested in looking into this. I have easily spend over $1,000 more on food than necessary for Pugo's special dog food in the last 4 years since he was prescribed that brand." Ms. Moore first spoke with counsel a few days later and the attorney-client privilege attaches to that communication. (Davis decl. at ¶5.)

While this document was not produced before Ms. Moore's deposition, there is no need or good cause to reopen her deposition over it. It contains an attorney's description of a possible action, which is remarkably similar to how this court, five years later, summarized the case. (Dckt. 184 at pp. 1-2.) Ms. Moore already testified about what she recalls discussing with Mr. Damons. Hill's has all of her invoices relating to her purchases of prescription pet food and questioned her about them. What more does Hill's <u>need?</u> This is a far cry from the situation in the lead case cited by Hill's, <u>In re Cathode Ray Tube (Crt) Antitrust Litigation</u>, (N.D. Cal., July 20, 2015, No. 3:07-CV-05944SC) 2015 WL 4451419, where the court ordered follow up depositions because of the delayed production of a crucial document:

> There is no dispute that the January 16, 2015 revised
> Exhibit B contained information about an additional 22
> meetings with backup documents by Bates numbers. This
> missing information is substantial in that the 22 additional
> meetings with competitors and some number of new
> contacts may be highly relevant to key issues or may lead
> to admissible evidence in this MDL. There is no dispute
> that evidence about Mitsubishi's meetings with competitors
> during the class period is relevant. [P. *3.]

In sum, there is no need or good cause to order Ms. Moore to give more testimony on her communications with Mr. Damons.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

6
PLAINTIFF'S OPP TO HILL'S MTC - CASE NO. 3:16-cv-7001-MMC

## B. Hill's is not entitled to an adverse inference

Hill's motion to impose an adverse inference against Ms. Moore for her deletion of innocuous text messages from her vet should be rejected for three reasons:

First, the deleted text messages were not lost and Hill's is not entitled to relief under Rule 37(e). Hill's received copies of the texts that VCA Animal Hospital (VCA) sent to Ms. Moore in the records produced to Hill's by VCA and Ms. Moore. Those documents show that the text messages from VCA to Ms. Moore were irrelevant and innocuous messages such as "Pugo's prescription diet is here and ready for pick-up."

Second, Hill's suffered no prejudice as a result of Ms. Moore's deletion of the text messages. The communication logs produced by VCA demonstrate that the text messages were irrelevant and do not contain anything of substance.

Third, there is no evidence that Ms. Moore acted with the intent to deprive Hill's of the text messages she deleted. She produced hundreds of pages of VCA records, including copies of the text messages.

### 1. Legal principles

Federal Rule of Civil Procedure 37(e) allows a court to sanction a party who fails to preserve electronically stored information ("ESI") if the ESI is lost and cannot be restored or replaced through additional discovery and either (1) the court finds that the loss of the ESI prejudiced the other party; or (2) the court finds that the party who failed to preserve the ESI acted with the intent to deprive the other of the information's use in litigation. The advisory committee notes to Rule 37(e) recognize that "[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Adv. Comm. Notes to 2015 Amendment to Rule 37(e)(1). If information is not truly "lost" and can be accessed from another source, sanctions under Rule 37 are inappropriate. Oracle Am., Inc. v. Hewlett Packard Enter. Co., 328 F.R.D. 543, 554 (N.D. Cal. 2018). The sanction of an adverse interest in a severe sanction and is justified only where the spoliating party's degree of fault and the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7
PLAINTIFF'S OPP TO HILL'S MTC - CASE NO. 3:16-cv-7001-MMC

prejudiced suffered by the other party are significant. Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1054 (S.D. Cal. 2015).

Under Rule 37(e)(1), "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Adv. Comm. Notes to 2015 Amendment to Rule 37(e)(1). In some cases, "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Id. District courts in California have recognized prejudice resulting from a failure to preserve evidence only where the loss of the evidence at issue substantially denies the other party of the ability to support its claims or defenses. Al Otro Lado, Inc. v. Wolf, No. 3:17-CV-02366-BAS-KSC, 2021 WL 631789, at *4 (S.D. Cal. Feb. 18, 2021), report and recommendation adopted sub nom. Al Otro Lado, Inc. v. Mayorkas, No. 19-CV-01344-BAS-MSB, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021); Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 631 (C.D. Cal. 2013). Therefore, the deletion of irrelevant evidence which does not prejudice the opposing party does not support a spoliation claim. Reinsdorf, 296 F.R.D. at 631. Further, "mere speculation that other deleted documents may exist that might be helpful to a party's case" is insufficient to support a finding of prejudice and spoliation. Id.

Finally, under Rule 37(e)(2), an adverse inference instruction is warranted "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "'Negligent or even grossly negligent behavior' is insufficient to show 'intent.'" Porter v. City & Cty. of San Francisco, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (quoting Adv. Comm. Notes to 2015 Amendment to Rule 37(e)). Rather, "courts have found that a party's conduct satisfies [the] intent requirement when the evidence shows, or it is reasonable to infer, that [ ] a party purposefully destroyed evidence to avoid its litigation obligations." Id. (collecting cases).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

### 2. The deleted text messages are not "lost" as Hill's received copies of them in the VCA records produced by Ms. Moore and VCA

As a threshold matter, Hill's must show that the deleted text messages were "lost" to be entitled to an adverse inference under either Rule 37(e)(1) or (e)(2). Hill's has failed to meet this threshold. In fact, Hill's obtained copies of text messages VCA sent to Ms. Moore in the VCA records produced by Ms. Moore and VCA, and Hill's used during her deposition. (See Exhibits A and C). The VCA records contain sections labeled "communications log" that contain, inter alia, any text messages VCA sent to Ms. Moore. The VCA records show that the only text messages VCA sent to her after the initiation of the instant lawsuit were sent on May 17, 2017 and June 13, 2017. Both messages include simple reminders to Ms. Moore her prescription pet food was ready for pick up. (Exhibit C at HILLS_VCA_000034.)

Because Hill's received copies of the text messages the messages are not "lost" within in the meaning of Rule 37(e), even though Ms. Moore deleted them from her phone. See Adv. Comm. Notes to 2015 Amendment to Rule 37(e)(1); see also Living Color Enters., Inc. v. New Era Aquaculture, Ltd., No. 14-CV-62216, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016) (a defendant's text messages were not lost under Rule 37(e) because they were provided to the plaintiff by another party). Accordingly, Hill's is not entitled to an adverse inference under Rule 37(e)(1) or (e)(2).

### 3. Hill's suffered no prejudice, as required by Rule 37(e)(1).

Hill's is not entitled to an adverse inference because it suffered no prejudice. As shown by the VCA records, the text messages to Ms. Moore included statements such as: "Pugo's prescription diet is here and ready for pick-up. We look forward to seeing you soon!" (Exhibit C at HILLS_VCA_000034). Although the messages reference prescription pet food, they are not relevant to any substantive issue in this case. Hill's cannot credibly claim prejudice, where its own copies of the deleted text messages reveal their unimportance. Further, Hill's used the VCA records containing the text messages during the deposition of Ms. Moore and had a full opportunity to

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

question her about any and all text messages from VCA.

Moreover, the "abundance of preserved information", including the hundreds of pages of VCA records Ms. Moore produced is more than "sufficient to meet the needs of all parties." Adv. Comm. Notes to 2015 Amendment to Rule 37(e)(1). These records provide Hill's with far more relevant information than the reminder notifications Ms. Moore deleted from her phone. Her deletion of VCA's text messages has not denied Hill's the ability to support its defenses where Hill's otherwise has all of the VCA records and treatment history of Ms. Moore's pets. Hill's has suffered no prejudice, and it is not entitled to an adverse inference under Rule 37(e)(1).

### 4. There is no evidence that Ms. Moore acted with intent to deprive Hill's of the information in the deleted text messages, as required by Rule 37(e)(2).

Finally, Hill's is not entitled to an adverse inference under Rule 37(e)(2) because there is no evidence that Ms. Moore acted with the intent to deprive Hill's of information. At her deposition, Ms. Moore testified that she does not keep a record of text messages on her phone, and she did not understand that she was supposed to preserve the text messages at issue. (Exhibit A at 225:20-226:3). This evidence suggests that she treated the text messages as she did any other message, due to her ignorance of the need to preserve them, rather than an intent to deprive Hill's of information. The evidence is not sufficient to show an intent to deprive.

Hill's cites Colonies Partners, L.P. v. Cty. of San Bernardino, No. 518CV00420JGBSHK, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020), as an example of a case where the court found an intent to deprive based on a party's deletion of text messages and an e-mail account after litigation commenced. [D.E. 206 at 10]. Colonies Partners is distinguishable. First, the party in Colonies Partners did not delete a few innocuous text messages. Rather, that party deleted text messages plus an entire e-mail account. Colonies Partners, L.P., 2020 WL 1491339, at *3. Second, the party who deleted text messages in Colonies

Partners was a former district attorney and an "experienced criminal practitioner." 2020 WL 1496444, at *10. Thus, the court found it unconvincing that such a "sophisticated party" would be unaware of his obligation to retain emails and text messages related to the litigation. Id. In contrast, Ms. Moore lacks any formal legal training.

In conclusion, there is no evidence that Ms. Moore purposefully destroyed evidence to avoid her litigation obligations, and Hill's is not entitled to an adverse inference or any other form of relief as inadvertent deletion of innocuous text messages from her vet does not rise to the level of intentional spoliation of evidence.

## III. CONCLUSION

Plaintiff respectively requests the court deny the motions.

Dated: July 5, 2022　　　　　　　　WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
MATTHEW D. DAVIS
Attorneys for PLAINTIFFS

ND:4892-6612-6631, v. 1