| | |
|---|---|
| Richard B. Goetz (S.B. #115666)<br>O'MELVENY & MYERS LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 430-6000  Fax: (213) 430-6407<br>rgoetz@omm.com<br><br>Amy Laurendeau (S.B. #198321)<br>O'MELVENY & MYERS LLP<br>610 Newport Center Drive<br>Newport Beach, CA 92660<br>Tel: (949) 823-6900  Fax: (949) 823-6994<br>alaurendeau@omm.com | Hannah Chanoine (*pro hac vice*)<br>Gerard A. Savaresse (*pro hac vice*)<br>Jeffrey A. N. Kopczynski (*pro hac vice*)<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000  Fax: (212) 326-2061<br>hchanoine@omm.com<br>gsavaresse@omm.com<br>jkopczynski@omm.com |

*Attorneys for Defendant*
HILL'S PET NUTRITION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| TAMARA MOORE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MARS PETCARE US, INC., et al.,<br><br>    Defendants. | Case No. 3:16-CV-07001-MMC<br><br>**DEFENDANT HILL'S PET NUTRITION, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL FURTHER DEPOSITION AND FOR ADVERSE INFERENCE**<br><br>Date: July 25, 2022<br>Time: 9:30 AM<br>Courtroom: 7<br>Judge: Hon. Magistrate Judge Sallie Kim |

## I. INTRODUCTION[1]

The Opposition does not and cannot deny that Plaintiff Tamara Moore and her counsel failed to comply with their discovery obligations to produce relevant documents in her possession, custody, and control. Those documents were requested nearly a year before her deposition on February 3, 2022. It is also undisputed that Ms. Moore and her counsel made material misrepresentation to Hill's asserting that she had conducted a "reasonable search" and had no further documents responsive to several key requests. (Mot. at 3.) Hill's only learned during her deposition and through the subsequent supplemental production that Ms. Moore failed to search for and produce responsive emails and had—*during the course of this litigation*—destroyed certain text communications with her veterinarian related to therapeutic pet food. (*Id.* at 4.) The belatedly produced and spoliated evidence are essential to the claims and defenses at issue in this litigation.

These are not Hill's contentions. Rather they are facts based on Ms. Moore's sworn testimony about her and her counsel's litigation conduct. (*Id.* at 3-4.) Hill's did not have an opportunity to question Ms. Moore about the email documents she belatedly searched for and produced. These documents—including documents and communications related to her Trupanion pet insurance policy—relate to Ms. Moore's alleged knowledge of and beliefs concerning therapeutic pet foods, as well as Hill's defenses in this matter. Accordingly, Hill's is entitled to reopen Ms. Moore's deposition and she or her counsel should bear the costs for the same.

Hill's is also entitled to an adverse inference to address the prejudice caused by Ms. Moore's spoliation of responsive text messages during the litigation. The Opposition's efforts to shift the focus from this discovery violation is unavailing. Ms. Moore's deleted text messages with her veterinarians also relate to her purported beliefs and information about products at issue and are not otherwise available. Ms. Moore and her counsel should not be allowed to play

---

[1] "Ex." herein refers to exhibits attached to the June 13, 2022 Declaration of Hannah Y. Chanoine (Dkt. 206-1) (the "Chanoine Decl.") and additional exhibits attached to the July 12, 2022 Declaration of Hannah Y. Chanoine (the "Supplemental Chanoine Decl."), filed concurrently with this Reply. Hill's motion (Dkt. 206) is cited and referenced herein as "Motion" or "Mot."; Plaintiff's opposition (Dkt. 212) is cited and referenced herein as "Opposition" or "Opp."

innocent and profit from the spoliation of evidence and their violations of discovery obligations.

### A. Hill's Has Shown Good Cause To Reopen Ms. Moore's Deposition

Contrary to the Opposition's assertions, Hill's supported its Motion with documentary and testimonial evidence, including references to previously unproduced documents included in Ms. Moore's supplemental productions, demonstrating that she failed to produce key documents prior to her deposition. (*See* Mot. at 5–6, Chanoine Decl. Ex. 3 (Dkt. 206-4) at 1, Ex. 5 (Dkt. 206-6) at 1, Ex. 6 (Dkt. 206-7).)[2] This evidence demonstrates good cause for reopening Ms. Moore's deposition.

In particular, Ms. Moore failed to produce documents and communications related to her Trupanion pet insurance policy. Hill's maintains that these documents show that, as early as 2013, Ms. Moore was on notice that therapeutic pet foods like Hill's Prescription Diet are not medicine and do not contain drugs. (Mot. at 5.) Hill's must have an opportunity to depose Ms. Moore about these documents, which were produced after her deposition. The Opposition argues that (i) Hill's did not request such documents before Ms. Moore's deposition; and (ii) the documents did not put her on notice that therapeutic pet foods are not medicine or drugs, rather Trupanion policy's coverage conditions "resembles" federal law definition of a "drug" so much that it supports the assumption that such foods contains a drug. (Opp. at 2-6.) These arguments fail for multiple reasons.

As an initial matter, the Trupanion insurance policy and related documents were responsive to several of Hill's initial requests served in March 2021, including but not limited to those concerning Pugolicious, therapeutic pet foods, and pet nutrition. (Mot. at 3-4, Chanoine Decl. Ex. 3 (Dkt. 206-4) at 2-3.)[3] Ms. Moore sat on her duty to conduct a reasonable search of

---

[2] For brevity and because nonduplicate portions of Ms. Moore's supplemental productions are undisputed, Hill's did not include each document Hill's will review in a reopened deposition. However, given Ms. Moore's incomplete submission of her productions (without bates numbers), Hill's has concurrently filed the nonduplicate portions of her belated productions (with bates numbers), *i.e.*, Supplemental Chanoine Decl. Ex. 12 (Mar. 22, 2022 production after Hill's discovery letter).

[3] Hill's defined "communication" and "document" consistent with Federal Rule 34(a)(1) to encompass "electronic" communications such as texts and emails. Supplemental Chanoine Decl. Ex. 13 (Hill's RFPs dated Mar. 19, 2021). Tellingly, Plaintiffs' discovery requests also defined "documents" broadly under Rule 34(a)(1) to include electronic files. Supplemental Chanoine

2    REPLY ISO HILL'S MOTION TO COMPEL
3:16-CV-07001-MMC

emails or text messages for almost a year, when any search for terms "therapeutic pet food" or "Pugolicious" would have yielded the Trupanion insurance documents. Moreover, the Opposition's assertion—that these documents were not responsive to Hill's initial document requests to Ms. Moore (Opp. at 3)—is belied by the fact that they were produced as part of Ms. Moore's supplemental production of her previously unsearched emails. (*See, e.g.,* Supplemental Chanoine Decl. Ex. 12 at Plaintiffs_00001125-1159, 00001714-1723.)

Next—contrary to Opposition's contention that the Trupanion insurance documents support her assumption that Hill's Prescription Diet food contains medication (Opp. at 3-4)—the policy actually recognizes the distinction between "medications" and "therapeutic pet food," separately defining each term. (Supplemental Chanoine Decl. Ex. 12 at Plaintiffs_00001127, Plaintiffs_00001131 ("We will cover the incremental cost of therapeutic pet food when recommended and dispensed by your veterinarian in the treatment of injuries or symptomatic illnesses covered by this policy for up to two months of feeding"), Plaintiffs_00001133 ("MEDICATION - Any medications prescribed and dispensed by your veterinarian.").) The contention that the policy defines therapeutic pet foods as containing a drug strains credulity because (i) such construction would combine distinctly defined coverage terms together, and (ii) under this broad interpretation of "drug," other defined terms such as "dietary supplements," "surgeries" or "medical procedures" would also be assumed to contain a "drug." (*Id.* at Plaintiffs_00001127, Plaintiffs_00001133 ("SURGERIES - Medical procedures that treat diseases or injuries . . . SUPPLEMENTS - Dietary supplements including vitamins and nutraceuticals that are prescribed and dispensed by your veterinarian in the treatment of injuries and symptomatic illnesses.").) *Wirth v. Liberty Mut. Ins. Co.*, 122 A.D.3d 1364, 1365 (4th Dep't 2014) (insurance contract terms "should not be assumed to be superfluous or to have been idly inserted"); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1253 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) ("[W]hen interpreting a contract, [courts] . . . avoid interpretations that

---

Decl. Ex. 14 (Plaintiffs' RFPs dated Mar. 5, 2021); Adv. Comm. (2006) ("Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. A common example. . . is electronic communications, such as e-mail.").

render any portion superfluous, void or inexplicable.") (citation omitted). In any event, these documents directly relate to Ms. Moore's alleged beliefs about Prescription Diet and Hill's is entitled to question her about those beliefs, including their relation to federal law.

Hill's also intends to examine Ms. Moore's understanding of other documents and communications related to the Trupanion policy to further explore the depth of her alleged belief, knowledge of therapeutic pet foods like Prescription Diet U/D, which she continued to purchase even after commencing this action. (*See* Davis Decl. Ex. A (Dkt. 212-2) at 190:16-191:18.) The Opposition concludes (before examination) that Ms. Moore "never made a claim under the Trupanion policy" for Prescription Diet. (Opp. at 4.) However, the record is not conclusive as to whether she ever made such a claim, received any discounts for Prescription Diet U/D (as the policy suggests), or inquired other information about Prescription Diet or therapeutic pet foods, all which are discoverable through deposition. (*See, e.g.,* Supplemental Chanoine Decl. Ex. 12 at Plaintiffs_00001138 (initiating coverage on Oct. 12, 2012), Plaintiffs_00001151 (communicating regarding claims submission and denial and further action), Plaintiffs_00001715-1717 (claims for various veterinary services, treatments, and medicines from May 2013 but no claims for Prescription Diet U/D), Plaintiffs_00001153 (stating that Ms. Moore learned "from the pet insurance people about what will not be covered," including "related to his allergies, spinal arthritis, kidney stones and eating non food items would not be covered").)

The Opposition also asserts that other communications in the supplemental production about Pugolicious and Ms. Moore's claims need not be covered with further deposition. (Opp. at 5-6.) However, the fact remains that such documents should have been produced earlier had she conducted a reasonable search of her emails of responsive information. Indeed, Ms. Moore testified that these types of communications would have refreshed her recollection and saved deposition time.[4] More importantly, Hill's is entitled to question Ms. Moore about specific,

---

[4] Communications about the lawsuit are certainly relevant and discoverable, especially given Hill's spent time discerning from incomplete records the precise time Ms. Moore alleges she learned the "truth" about Prescription Diet products, despite continuing to buy the same products long after. *See, e.g.,* Davis Decl. Ex. A (Dkt. 212-2) at 139:11-18 ("Q. When in 2016 did you speak to your friend about the possibility -- about this lawsuit? A. I don't remember the month. Q. Could it have been in January of 2016? A. It could have been anytime in 2016."), 139:22-140:7

previously unproduced communications with other potential class members (*e.g.*, "Tyler Moore" and "Debbie Dulmage," Supplemental Chanoine Decl. Ex. 12 at Plaintiffs_00001125, Plaintiffs_ 00001151), and what she learned about therapeutic pet foods in 2013 and long after (*e.g.*, *id.* at Plaintiffs_00001153). Such communications are critical to further investigating the fact that Ms. Moore continued purchasing Prescription Diet U/D after discussing joining the potential lawsuit (*e.g.*, *id.* at Plaintiffs_00001726-27)—and even after the filing and amending of the Complaint— directly refuting her allegation that she would not have purchased the food had she learned of the alleged "truth" about these products.[5] Courts have reopened depositions for such belatedly produced material documents and thus the Court has good cause to do so here. (Mot. at 7 (*e.g., Nelson v. Millennium Labs., Inc.*, 2013 WL 11693772, at *1 (D. Ariz. June 26, 2013); *Pax Water Techs., Inc. v. Medora Corp.*, 2019 WL 12381114, at *2 (C.D. Cal. Oct. 15, 2019)).)

   Moreover, now that it has Ms. Moore's belated productions in hand, Hill's intends to further question her regarding the search parameters and any preservation steps she has taken. Even after testifying that she has withheld responsive information among her emails, Ms. Moore

---

("Q. Okay. After you spoke -- had spoke in person and then by e-mail -- well, when you spoke with your friend, how long after you spoke with him did you exchange e-mails about this lawsuit? A. I don't remember. Q. Okay. If we looked at your e-mails, do you think that would be able to refresh your recollection? A. Yes."), 156:4-11 ("Q. All right. Did at any point in -- do you remember anything happening in 2017 with respect to the case? A. I don't remember. Q. Okay. Do you think looking at your e-mails would refresh your recollection? A. Yes."), 158:9-159:4 ("Q. I asked you a bunch of questions about when things happened and you said you didn't know so working backwards from December 7, 2016, does this help orient you to when you connected with the Walkup Melodia firm, when you met with them, when you first saw a draft, when you had communications with them, all of that, does this help orient you or refresh your recollection as to when in 2016 that whole relationship was formed before the complaint was filed? A. None of the specifics. Q. How about was it over a six-month period? A. I can't say for sure. Q. But that's something again we could figure out from your e-mails; correct? A. Correct.").

[5] *Compare* Davis Decl. Ex. A (Dkt. 212-2) at 190:16-191:18 ("Q. Going back to Exhibit 29 which are the records from VCA Crocker and it looks like also VCA Lewelling, I'm returning to page Plaintiffs_00000832 to the 5/17 purchase date. And you would agree that when you purchased this bag of Prescription Diet u/d on May 17, 2017, after having filed the complaint as the named plaintiff in this litigation on December 7, 2016, after having agreed and approved of an amended complaint in February of 2017, you purchased the u/d with full knowledge that Prescription Diet u/d did not contain any drug or medicine in the food; correct? A. Correct. Q. And you bought it with full understanding that there was no prescription required as alleged in your complaint; correct? A. Yes. Q. And you also bought this food with full understanding that there was no ingredient in Prescription Diet that is also not common to other pet foods; correct? A. Correct.") *with* Compl. ¶¶ 143, 150, 154.)

only produced *some* documents without a comprehensive search. (*See* Mot. at 5; Chanoine Decl. Ex. 2 (Dkt. 206-3) (Moore's Feb. 15, 2022 RFP responses).) Ms. Moore only represented that she completed a comprehensive search for all responsive materials after Hill's sent its March 8, 2022 letter demanding compliance with discovery obligations. (Chanoine Decl. Ex. 4 (Dkt. 206-5) at 1.) Of course, she has made such representations before only to have those claims disproven through deposition. (*Compare* Chanoine Decl. Ex. 1 (Dkt. 206-2) at 2, 5-6, 8-14 *with* Chanoine Decl. Ex. 6 (Dkt. 206-7) at 136:16-23, 137:16-18.) As Hill's explained in the Motion, serious questions remain about the adequacy of Ms. Moore's belated search, collection, and production, including but not limited to the communications with her veterinarians. (Mot. at 5, Chanoine Decl. Ex. 5 (Dkt. 206-6) at 1–2.)[6]

Lastly, the Opposition does not dispute and thus concedes that Ms. Moore or her counsel should bear the costs of the reopened deposition given her failure to timely search for or produce withheld responsive information. (Mot. at 8.)[7]

### B. Hill's Has Met Rule 37(e)'s Standard For An Adverse Inference Sanction

The Opposition asserts that Ms. Moore's deleted text messages "were not lost" because VCA Animal Hospital records documented *some* text messages, assumes that those records covered *all* deleted texts. It further contends that Hill's has not been prejudiced and that Ms. Moore did not act with the requisite intent for "the text messages she deleted." (Opp. at 7-10.) Again, these arguments are belied by the record, including Ms. Moore's sworn testimony.

---

[6] For example, while Ms. Moore preserved emails dating back to 2013, she has not produced any emails with or from veterinarians throughout the relevant time period. This includes no emails from Dr. Jasmine Morris, despite references in the record of an "Email with food recommendations" that provided Prescription Diet U/D feeding instructions for Pugolicious. Chanoine Decl. Ex. 9 (Dkt. 206-10) at 3; *see also* Davis Decl. Ex. C (Dkt. 212-4) at 42. Further, she has not produced any responsive text messages at all, whether with individuals like Dr. Morris or her "best friend" Mr. Damons.

[7] The Opposition discusses purportedly duplicate portions of Ms. Moore's supplemental productions. Opp. at 2–3. This is a distraction, as those documents are not at issue here. Hill's did not "insist[]" that Ms. Moore reproduce vet records, and certainly did not convey an interest in reopening deposition to examine duplicates. Instead, Hill's made clear the root cause of the dispute, *i.e.,* Ms. Moore's failure to comply with basic discovery obligations through discovery, such as searching her email accounts for responsive materials while misrepresenting to Hill's that she had done so. Mot. at 7, Chanoine Decl. Ex. 3 (Dkt. 206-4) at 2–3, Ex. 1 (Dkt. 206-2) at 2, 8-9, 11.

The Opposition concedes that Ms. Moore deleted responsive text messages, engaged in spoliation, and to date has not produced a single text with her veterinarians, veterinary clinics, or other related persons. The Opposition asserts that the deleted messages are not lost and were all "irrelevant and innocuous" is pure conjecture. (Opp. at 7.) Plaintiffs' counsel has represented that Ms. Moore could not "retrieve" any such messages. Ms. Moore testified she communicated with her veterinarians about Prescription Diet products *after* commencing the lawsuit and deleted those communications. (Chanoine Decl. Ex. 4 (Dkt. 206-5) at 1, Ex. 6 (Dkt. 206-7) at 227:2-10 ("Q. And you received communications from your veterinarian on your cell phone about u/d food which is the subject of this litigation after you became a named plaintiff in this case; correct? A. Yes. Q. And you've deleted those communications; correct? A. Yes.").)[8]

Deleting and never producing responsive text messages has certainly prejudiced Hill's by denying it evidence which could be used to question and challenge Ms. Moore purported beliefs or knowledge about Prescription Diet products. The deleted text messages may have included *inter alia* information from veterinarians clarifying or contradicting her understanding of or claims about the foods' content. (Mot. at 11.) Ms. Moore has failed to meet her burden to show that such lost communications are not relevant discovery or that Hill's had (or will ever have) an opportunity to review such information. *See Aramark Management, LLC v. Borgquist*, 2021 WL 864067, at *12-13 (C. D. Cal. Jan. 27, 2021); *see also* Opp. at 8 (citing case law recognizing spoliation that prevents a party to support its claims or defenses).

Finally, Hill's has shown ample evidence to infer that Ms. Moore purposefully destroyed evidence and avoided her discovery obligations. It is undisputed that Plaintiffs' counsel failed to

---

[8] As Hill's explained, Hill's third-party discovery requests did not retrieve deleted communications with veterinarians, and the few *potential* text messages reflected in the productions (regarding purchase orders) did not document or otherwise restore Ms. Moore's deleted texts with her veterinarians. Mot. at 9-11; Chanoine Decl. Ex. 5 (Dkt. 206-6) at 2 (noting that such deleted texts may have reflected Ms. Moore's knowledge, beliefs, questions, or information from veterinarians about therapeutic diets or Prescription Diet foods' content). Moreover, the veterinary records are not text messages, and they contain various gaps that could not possibly have documented all relevant text messages. *See* Chanoine Decl. Ex. 5 (Dkt. 206-6) at n.2 (VCA transitioned from paper to electronic records), David Decl. Ex. A (Dkt. 212-2) at 225:11-19 (testifying that certain clinics began "using a text message system," definitely "Almaden" [VCA veterinary clinic]).

instruct Ms. Moore to preserve evidence—even during the litigation—despite clear legal obligations to do so. (Mot. at 9-10.) Ms. Moore testified that she actively deleted text messages regarding authorization to use Prescription Diet products *after* filing the lawsuit (Mot. at 4) and has yet to produce a single text message with her veterinarians throughout the relevant time period of 2012 through the present. There is no evidence supporting the inference that Ms. Moore "accidentally" deleted text messages. In fact, Ms. Moore produced other communications dating back to 2013. Nor is there any evidence that her texts were subject to auto-delete functions on her phone. While the Oppositions asserts that Ms. Moore's "lack[] formal legal training" excuses her spoliation (Opp. at 11), her experienced counsel cannot hide behind the same excuse (especially given her counsel's claim to be adequate counsel for the putative class). This is enough grounds for a spoliation sanction under Federal Rule 37(e)(2) and is supported by case law that goes unchallenged. Mot. at 10-12; *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017); *see also Youngevity v. Smith*, 2021 WL 2559456, at *1 (S. D. Cal., May 19, 2021) (stating that spoliation can result in monetary sanctions for destroying relevant ESI and attorney's fees "incurred as a result"). Thus, sanctions—including an adverse inference—is warranted here.

## II.     CONCLUSION

For the foregoing reasons, Hill's respectfully requests that the Court grant this Motion, compel Ms. Moore to produce herself for further deposition, and impose an adverse inference instruction regarding her spoliation of evidence.

|  |  |
|---|---|
| Dated: July 12, 2022 | O'MELVENY & MYERS LLP |
|  | By: /s/ Hannah Y. Chanoine |
|  | Hannah Y. Chanoine |
|  | *Attorneys for Defendant*<br>HILLS PET NUTRITION, INC. |