Jeffrey E. Faucette (State Bar No. 193066)
SKAGGS FAUCETTE LLP
Four Embarcadero Center, Suite 1400 PMB #72
San Francisco, CA 94111
Telephone: (415) 295-1197
Facsimile: (888) 980-6547
E-mail: jeff@skaggsfaucette.com

Stephen D. Raber (State Bar No. 121958)
Joseph S. Bushur (*pro hac vice*)
Campbell E. Curry-Ledbetter (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: sraber@wc.com
E-mail: jbushur@wc.com
E-mail: ccurry-ledbetter@wc.com

*Attorneys for Defendant Mars Petcare US, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TAMARA MOORE, et al., <br><br>             Plaintiffs, <br><br>     v. <br><br> MARS PETCARE US, INC., et al., <br><br>             Defendants. | Case No. 3:16-cv-07001-MMC <br><br> **MARS PETCARE US, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF RENEE EDGREN'S CLAIMS** <br><br> Date: Friday, March 3, 2023 <br> Time: 9:00 am <br> Courtroom: 7 <br> Judge: Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................2

I. All of Ms. Edgren's Claims Require Proof of Reliance ................................................2

II. Ms. Edgren Did Not Actually Rely on a Mars Petcare "Prescription Requirement" ....3

    A. Ms. Edgren Does Not (and Cannot) Present Evidence That She Relied on the "Prescription Requirement" ...................................................................................3

    B. Ms. Edgren Relied on Her Veterinarian's Advice and Recommendations .......5

    C. The "Prescription Requirement" Is Not a Misrepresentation ............................6

III. Ms. Edgren's Testimony Forecloses the Opposition's Omission Theory .....................7

IV. Ms. Edgren Lacks Standing to Seek Injunctive Relief ..................................................8

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

*Amiodarone Cases*, 84 Cal. App. 5th 1091, 300 Cal. Rptr. 3d 881 (2022) ........................... 4, 5

*City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d. 610 (N.D. Cal. 2020) ........................................................................................................................................ 5

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ................................................. 2

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ................................ 8, 9, 10

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .................................................................. 6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ........... 10

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) ............................................................... 8

*In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ..................................................................... 4

*Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................ 10

*Joseph v. Costco Wholesale Corp.*, No. 2:14-CV-06899-SVW-KK, 2016 WL 759559 (C.D. Cal. Feb. 24, 2016), *aff'd*, 691 F. App'x 865 (9th Cir. 2017) ............................................... 7

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) ................................. 8, 9

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021) ..................................................... 6

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ................................... passim

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) .......................................................... 6

*Patel v. City of Long Beach*, 564 F. App'x 881 (9th Cir. 2014) ............................................. 2

*Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) ........................... 10

## INTRODUCTION

Ms. Edgren's Opposition declares this case is about Mars Petcare's use of a "prescription requirement." ECF No. 227 ("Opp.") at 1. In so doing, it attempts to brush aside as irrelevant Ms. Edgren's admissions that she (i) did not see any Iams advertisements before purchasing Iams Veterinary Formula pet food, (ii) did not look at any labels before purchasing the pet food, (iii) could not point to anything inaccurate on the labels, and (iv) did not compare any Iams Veterinary Formula pet food to non-prescription pet food. And it ignores her admission that anyone reading the "PET FOOD ONLY" statement on the packaging would conclude that the pet food consisted only of food.

But those admissions cannot be disregarded. The Ninth Circuit's opinion in this case emphasized that "labels matter." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020). Its reasoning depended upon Plaintiffs' allegations of reliance on misrepresentations on Defendants' labels and in consumer-directed marketing, *id.* at 1018, 1021, and an alleged lack of material difference between prescription and non-prescription pet food, *id.* at 1019-20. The Ninth Circuit's opinion does not suggest that Ms. Edgren could make out a claim without these allegations.

Ms. Edgren disavowed these essential allegations at her deposition. So, the Opposition bets the farm on the "prescription requirement" theory. But neither the law nor the evidence supports that theory. Despite the Opposition's repeated assertions to the contrary, Mars Petcare's policy requiring that retailers sell Iams Veterinary Formula pet foods pursuant to a veterinary authorization are not misrepresentations to Ms. Edgren—much less misrepresentations that Ms. Edgren relied upon. To the contrary, as demonstrated in Mare Petcare's Memorandum of Points and Authorities, ECF No. 223 ("Mem."), Ms. Edgren purchased the pet food solely because her veterinarian told her to feed it to her dog. The Opposition fails to demonstrate a genuine dispute of material fact on the reliance element of Ms. Edgren's claims, and this Court should grant summary judgment to Mars Petcare.

## ARGUMENT

**I.      All of Ms. Edgren's Claims Require Proof of Reliance**

Ms. Edgren agrees that she alleges claims of misrepresentation for which proof of reliance is required. Opp. 10. But she also asserts that she is bringing additional claims for which no proof of reliance is required—namely, UCL claims premised on violations of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"); California's Sherman Food, Drug, and Cosmetic Law; and for engaging in "unfair" conduct. Opp. 1-2 & n.2. None of these additional claims are alleged in the operative Second Amended Class Action Complaint, ECF No. 116. To the contrary, the operative complaint is clear that the UCL, FAL, and CLRA claims are premised solely on alleged misrepresentations by Defendants. ECF No. 116 at ¶¶ 142, 146, 153. There is no allegation that Defendants are liable under these laws because of violations of the FD&C Act or the California Sherman Law,[1] or that Defendants violated the UCL's "unfair" prong.

The Ninth Circuit, when considering the operative complaint, even noted that "[t]he gravamen of Plaintiffs' claim is that Hill's and Mars violated the UCL, FAL, and CLRA through their false and misleading advertising of prescription pet food." *Moore*, 966 F.3d at 1016; *see also id.* at 1016 n.7 ("the cause of action under each California state law is premised on the same allegedly misleading acts"). Ms. Edgren cannot assert new, unpled legal theories in opposition to summary judgment. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) ("[A] plaintiff cannot raise a new theory for the first time in opposition to summary judgment."). The only legal theories that are part of this case are those sounding in misrepresentation, all of which require evidence of actual reliance.[2]

---

[1] While the complaint alleged a (since-dismissed) federal Sherman Act claim, it did not even mention the California Sherman Law.

[2] The issue of Plaintiffs' improper and untimely insertion of new theories of liability into this case is addressed more fully in Defendants' Motion to Strike or Exclude Unpled Claims or, Alternatively, for Judgment on the Pleadings, filed contemporaneously with this reply.

**II.     Ms. Edgren Did Not Actually Rely on a Mars Petcare "Prescription Requirement"**

The Opposition says that the "prescription requirement" was a "Mars require[ment]" that "all retailers of its VF Products, including veterinarians … sell those products pursuant to a prescription."  Opp. 1.  And it rests primarily on the assertion that this "prescription requirement" was a false representation to consumers that Veterinary Formula pet foods were "prescription products."  *E.g.*, Opp. 11.

The Opposition fails to demonstrate a genuine dispute of material fact as to reliance because it identifies no evidence showing that the "prescription requirement" was a "misrepresentation" that "was an *immediate cause* of the injury-producing conduct," (that is, Ms. Edgren's purchase of the pet food).  *Moore*, 966 F.3d at 1020 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 246 P.3d 877, 888 (2011)) (emphasis in original).  There are three key reasons why the Opposition falls short.  First, Ms. Edgren does not present any evidence that the "prescription requirement" existed in the way the Opposition characterizes it, much less that she relied on it.  Second, Ms. Edgren's testimony demonstrates that she relied on her veterinarian's advice and recommendations—not on the "prescription requirement."  Third, the "prescription requirement" was not a misrepresentation, but rather a procedural requirement for ensuring that Iams Veterinary Formula pet food was appropriately fed to sick dogs and cats.

**A.     Ms. Edgren Does Not (and Cannot) Present Evidence That She Relied on the "Prescription Requirement"**

The Opposition points to two sources by which Ms. Edgren was supposedly exposed to the "prescription requirement":  (i) the Iams Veterinary Formula label, and (ii) her veterinarian, who "prescribed" the pet food.  Opp. 3, 12.  Neither of these sources supports Ms. Edgren's claim of reliance on a Mars Petcare "prescription requirement."

The Opposition's argument relating to the Iams Veterinary Formula label is irrelevant because Ms. Edgren admitted that she did not look at the label or packaging of the pet food before

1  buying it.  Mot. Ex. A at 106:1-9.  Plainly, Ms. Edgren could not have relied on a label that she did
2  not see before purchasing the pet food.  *See* Mem. 9-11.[3]

3  The Opposition's contention that Ms. Edgren was exposed to the "prescription requirement"
4  because her veterinarian "prescribed" the food fares no better.  While Ms. Edgren testified that her
5  veterinarian "prescribed" the food, she presents no evidence that her veterinarian ever used the
6  word "prescribed," wrote a "prescription," or referred to the food as a "prescription" product.  The
7  Opposition also provides no evidence tying her veterinarian's prescribing to a Mars Petcare
8  "prescription requirement."  Instead, it asks the Court to assume that such a causal link exists.  But
9  there is no evidentiary basis for such an assumption.

10  In fact, Ms. Edgren points to no evidence showing that Mars Petcare did anything to require
11  any veterinarians to "prescribe" Iams Veterinary Formula.  The Opposition rests primarily on
12  citation to the deposition of a Mars Petcare Rule 30(b)(6) witness.  Opp. 4 (citing Opp. Ex. A at
13  97:15-98:3).  But the witness actually testified Iams Veterinary Formula pet foods "required
14  ***veterinary authorization*** before their sale"—not that they required a "prescription."  Opp. Ex. A at
15  97:15-98:3 (emphasis added).  The Opposition also cites product labels, Opp. Ex. B, which
16  imposed no obligations on veterinarians; an internal Mars Petcare email thread, Opp. Ex. C, where
17  the word "prescription" was used offhand and not communicated externally; and a letter, Opp. Ex.
18  D, stating that "IAMS® Veterinary Formula products are restricted for resale to consumers only
19  through licensed veterinarians and veterinary clinics."  None of these documents suggest that Mars
20  Petcare required veterinarians to "prescribe" Iams Veterinary Formula.

21  While the Opposition attempts to distinguish *In re Actimmune Marketing Litigation* and
22  *Amiodarone Cases*, Opp. 14, those cases stand for the simple principle that a plaintiff must
23  ***actually show*** that her doctors acted "as a result of" a defendant's misrepresentations.  *In re*

---

[3] While Ms. Edgren's testimony clearly establishes the irrelevance of the Iams label, the evidence also shows that the label was not misleading.  *See* Mem. 9-11.  The Opposition latches onto the snippet "prescribed and sold only by veterinarians," but the full phrase on the bag is "*Dog food prescribed and sold only by veterinarians for nutritional* management of allergies and related gastrointestinal challenges, plus support of overall health & well-being."  Mot. Ex. D (emphasis added).  Ms. Edgren admits that the term "nutritional" refers to food.  Mot. Ex. A at 16:9-14.  The bag also states "PET FOOD ONLY," and Ms. Edgren agreed that "anyone who read the statement … would conclude that this product consists only of food."  *Id.* at 113:10-21.

1  *Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *10 (N.D. Cal. Sept. 1,
2  2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *Amiodarone Cases*, 84 Cal. App. 5th 1091, 1116,
3  300 Cal. Rptr. 3d 881, 904-05 (2022). Ms. Edgren does not (and cannot) make such a showing.
4  The Opposition attempts to fill this gap by citing to *City and County of San Francisco v. Purdue*
5  *Pharma L.P.*, 491 F. Supp. 3d. 610, 692 (N.D. Cal. 2020). Opp. 14. But that case involved
6  allegations that defendants "controlled front groups by developing, reviewing, approving, and
7  distributing their published content." *City & Cnty. of San Francisco*, 491 F. Supp. 3d at 691-92.
8  Here, there is no evidence that Mars Petcare controlled the conduct or speech of Ms. Edgren's
9  veterinarian.

10       **B.**    **Ms. Edgren Relied on Her Veterinarian's Advice and Recommendations**

11  Even if Ms. Edgren had presented evidence that her veterinarian "prescribed" because of a
12  Mars Petcare "prescription requirement," she still would fall short of showing that the "prescription
13  requirement" was an "immediate cause" of her injury. That is because—as explained in detail in
14  Mars Petcare's Memorandum—Ms. Edgren's testimony establishes that she bought the Iams pet
15  food because her veterinarian told her to feed it to help her sick dog, not because of any
16  "prescription requirement." *See, e.g.*, Mot. Ex. A. at 60:25-61:3 ("Q. You rely on Barkley's
17  veterinarians to help you decide what diet is best for Barkley, correct? A. Yes."), 68:17-20 ("Q.
18  And so your purchasing decisions for dog food for Barkley were based on your dealings with the
19  vet, right? A. Yes."), 106:17-20 ("I just trusted the vet. Whatever they prescribed to me, you
20  know, I trusted the ingredients in there would be the right active ingredients.").

21  Ms. Edgren testified that she understood that the Iams food would help her dog's allergies
22  because it contained "a protein that he'd never had before, kangaroo"—not because it contained a
23  drug. *Id.* at 63:12-16. The letter that Ms. Edgren's veterinarian wrote memorializing the
24  information she provided to Ms. Edgren, Mot. Ex. C, does not characterize the Iams food as a
25  "prescription" or say it is being "prescribed." Instead, under the heading "Recommendations," it
26  states, "Starting next Wednesday, begin the strict 6-8 week elimination diet trial by transitioning
27  from current food to Iams K/O diet." *Id.* Ms. Edgren admitted that nothing in this
28  recommendation indicated that the Iams food was a prescription drug, and that she relied on this

1 recommendation in purchasing the food.  Mot. Ex. A at 88:21-89:24.  Ms. Edgren also went on to testify, "I did think it was a prescription at the time. … That's how I interpreted our conversation." *Id*. at 89:19-24.  In other words—according to Ms. Edgren—her understanding that the Iams food was "prescribed" came not from any words used by Mars Petcare in advertising or labels, or even from words used by her veterinarian, but rather from her own *interpretation* of her conversation with her veterinarian.  Ms. Edgren's patently unreasonable interpretation does not raise a *genuine* factual dispute.

The Ninth Circuit noted that this Court, at the motion to dismiss stage, "discounted the potential to mislead in part because vets play a role in the referral process," and reversed in light of Plaintiffs' allegations that "prescription pet food is marketed to consumers." *Moore*, 966 F.3d at 1018.  The evidence shows that Ms. Edgren did not rely on any consumer-facing marketing.  Mot. Ex. A at 106:1-9, 103:21-24.  The evidence drives home this Court's concern about the role of veterinarians.  It is a "general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (quoting *Bell v. Publix Super Markets Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)); *accord Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) ("Any ambiguity that Freeman would read into any particular statement is dispelled by the promotion as a whole.").  Looking at all the information provided to Ms. Edgren and the context in which her veterinarian provided it to her, it is clear that the immediate cause of Ms. Edgren's purchase was her veterinarian's recommendation that a food with kangaroo protein would help her dog—and not any "prescription requirement."

**C. The "Prescription Requirement" Is Not a Misrepresentation**

At the motion to dismiss stage, the Ninth Circuit, taking Plaintiffs' allegations as true, stated that "it is reasonable for a consumer to rely on the prescription requirement *and* labeling in her purchasing decision." *Moore*, 966 F.3d at 1021 (emphasis added).  Now, however, Ms. Edgren must produce specific evidence supporting her allegations. *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021).  And the evidence produced by Ms. Edgren does not show that the Mars Petcare "prescription requirement" is a misrepresentation that consumers can reasonably rely on.

1   The Ninth Circuit understood the "prescription requirement" to be something that was
2   directly communicated to Plaintiffs. Indeed, it did not discuss the "prescription requirement" in
3   isolation and instead referred to the requirement in conjunction with "prescription" labels and
4   advertisements. *See, e.g.*, *Moore*, 966 F.3d at 1018 ("the labeling of 'prescription pet food' does
5   appear deceptive and misleading"); *id.* at 1021 (discussing allegation of reliance on "the
6   prescription requirement and advertising"); *id.* ("it certainly seems plausible that a reasonable
7   consumer would at least partially rely on the prescription labeling"). But Ms. Edgren did not see
8   labels or see advertisements before she purchased the Iams pet food, nor is there any evidence that
9   Mars Petcare's policies (which required veterinary authorization, not "prescriptions") played any
10  role in, let alone immediately caused, her purchasing decision. The evidence shows that the
11  "prescription requirement" is a procedural obligation imposed on retailers in order to ensure that
12  sick dogs and cats get appropriate nutrition under veterinarian supervision, *see* Opp. Ex. A at
13  84:18-20, 110:12-16—not a misrepresentation to consumers.

### III.   Ms. Edgren's Testimony Forecloses the Opposition's Omission Theory

15  The Opposition contends that Mars Petcare "made material omissions about its VF Products
16  by failing to disclose to consumers on the product labels or elsewhere that VF Products are not
17  legally required to be sold by prescription and that they do not contain a drug or medicine." Opp.
18  1. Any theory of liability based on Mars Petcare's omissions is foreclosed by Ms. Edgren's
19  testimony and by law.
20  First, and most importantly, Ms. Edgren admitted that she did not look at the label of the
21  Iams pet food before purchasing it. Mot. Ex. A at 106:1-9. As a matter of law and logic, a plaintiff
22  who did not read a product label prior to purchase cannot have relied on an omission on the label—
23  because the plaintiff cannot show that she would have been aware of the allegedly omitted
24  information had it been disclosed. *See Joseph v. Costco Wholesale Corp.*, No. 2:14-CV-06899-
25  SVW-KK, 2016 WL 759559, at *4 (C.D. Cal. Feb. 24, 2016), *aff'd*, 691 F. App'x 865 (9th Cir.
26  2017).
27  Second, Ms. Edgren conceded that she could not identify anything inaccurate on the Iams
28  label or packaging. Mot. Ex. A at 121:4-6. She further acknowledged that the label says "PET

1  FOOD ONLY" in all caps and bold text, *id.* at 112:19-24, and that "anyone who read the statement
2  on this packaging that says 'PET FOOD ONLY' would conclude that this product consists only of
3  food," i*d.* at 113:10-21.  The Opposition's omission argument is therefore contradicted by the
4  evidence and provides no basis for avoiding summary judgment.

    Third, Mars Petcare had no duty to disclose that "VF Products are not legally required to be
6  sold by prescription and that they do not contain a drug or medicine."  Opp. 1.  Under California
7  law, in an omissions case, the duty to disclose arises only for matters concerning a "safety defect"
8  or "physical product defect relating to the central function of the [product]."  *Hodsdon v. Mars,*
9  *Inc.*, 891 F.3d 857, 865 (9th Cir. 2018).  Ms. Edgren does not—and cannot—show that the absence
10 of a legal requirement to sell by prescription or the absence of a drug or medicine in Iams
11 Veterinary Formula pet food is a safety defect or a physical product defect.

12 **IV.   Ms. Edgren Lacks Standing to Seek Injunctive Relief**

13     As Mars Petcare explained in its Memorandum, in order to pursue injunctive relief, Ms.
14 Edgren must present evidence showing that she faces a "threat of injury" that is "actual and
15 imminent, not conjectural or hypothetical."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967
16 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Lanovaz v.*
17 *Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018).  "Past wrongs" are "insufficient by
18 themselves to grant standing."  *Davidson*, 889 F.3d at 967.  "[T]he 'threatened injury must be
19 *certainly impending*,'" and a merely "*possible* future injury [is] not sufficient" to confer standing.
20 *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in original).

21     Mars Petcare's Memorandum provided three reasons why the evidence precludes Ms.
22 Edgren from showing standing to seek injunctive relief.  The Opposition's arguments to the
23 contrary are inconsistent with the law.

24     *First*, Ms. Edgren faces no "actual or imminent" threat because Mars Petcare stopped
25 manufacturing and selling the Iams Veterinary Formula pet foods more than six years ago.  *See*
26 Mem. 15-16.  The Opposition does not dispute that Mars Petcare ceased selling Iams Veterinary
27 Formula on January 1, 2017, and it presents no evidence that Mars Petcare is likely to sell Iams
28 Veterinary Formula again.  Instead, it suggests that Ms. Edgren can pursue injunctive relief

because it is not impossible that Mars Petcare could one day revive the long-discontinued Iams Veterinary Formula product line. But, as *Davidson* and *Lanovaz* make clear, it is Ms. Edgren who has the burden of showing that she faces an "actual and imminent," "certainly impending" threat of future injury. The Opposition's unsupported speculation that Mars Petcare could one day resume sales does not suffice.[4]

**Second**, Ms. Edgren's testimony that she would not buy any veterinary or prescription diet pet food again "if there's no drug in it," Mot. Ex. A at 132:21-25, demonstrates that she does not face an actual, imminent, non-hypothetical injury. The Opposition paraphrases Ms. Edgren's testimony as being that she "would be willing to purchase a prescription pet food" if "controlled ingredients" were added to the food and it "was legally required to be marketed and sold as a prescription." Opp. 16. But Ms. Edgren's testimony shows that she is less than "willing" to buy prescription pet food. And, in any event, Ms. Edgren must present evidence of more than mere willingness to make a future purchase—she must show she faces an actual and imminent threat of future harm.

The Opposition quotes *Davidson*, but it misreads it. *Davidson* considered whether previously deceived consumers were categorically prohibited from seeking injunctive relief. *Davidson*, 889 F.3d at 967-68. It held that there was no categorical prohibition and that previously deceived consumers could, in certain factual circumstances, demonstrate that they face "an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers*, 555 U.S. at 493). Such a factual circumstance is not present here because Ms. Edgren's testimony demonstrates that she faces no actual and imminent threat of future harm.

Mars Petcare's Memorandum explained that Ms. Edgren faces no actual and imminent threat of future confusion because she now knows that her assumption that pet food sold by veterinary authorization or prescription contained a prescription medicine was erroneous. Mem. 16-17. The Opposition has no answer to this. Instead, it contends that, absent an injunction, Ms. Edgren "will

---

[4] The Opposition posits that "the balancing of hardships promotes the court awarding" an injunction because Mars Petcare would not be harmed by an injunction if it does not intend to sell Iams Veterinary Formula. Opp. 16. This is a merits question that is irrelevant to the threshold standing requirement at issue here.

1  have no way to be sure that Mars has finally ceased its sale of VF Products and the
2  misrepresentations about its product." Opp. 17.  But the test for standing is not whether sales or
3  alleged misrepresentations might possibly occur in the future, but instead whether Ms. Edgren
4  faces an actual and imminent threat of being deceived by those sales and misrepresentations.  The
5  case cited by the Opposition, *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957 (N.D. Cal.
6  2022), makes this very point:  "[W]here a plaintiff's knowledge forecloses the risk of future harm,
7  the plaintiff cannot seek injunctive relief."  *Id.* at 975.  Ms. Edgren's knowledge that Iams
8  Veterinary Formula does not contain a prescription medicine forecloses the risk of future harm—
9  particularly because, as she acknowledges, she can read the labels of the pet food to determine the
10 ingredients and see that they say "PET FOOD ONLY."  Mot. Ex. A at 113:10-21, 121:7-10.

11      ***Third***, Ms. Edgren now lives in Florida, and California statutes do not apply to future pet
12 food purchases she may make in Florida.  Mem. 17.  The Opposition does not assert that Ms.
13 Edgren will make future purchases in California or dispute that the UCL, FAL, and CLRA do not
14 apply "where none of the alleged misconduct or injuries occurred in California."  *See Wilson v.*
15 *Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (citation omitted).
16 Nonetheless, it contends—without citing any supporting law—that Ms. Edgren can pursue an
17 injunction under the California statutes because she suffered past injuries in California.  Opp. 17.
18 But "a plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of*
19 *the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  And "[p]ast
20 wrongs" are "insufficient by themselves to grant standing."  *Davidson*, 889 F.3d at 967.  The
21 California statutes under which Ms. Edgren seeks relief would not apply to any future purchases
22 outside of California so she cannot seek injunctive relief pursuant to those statutes here.

23                                          **CONCLUSION**

24      For the reasons stated above and in Mars Petcare's opening Memorandum, this Court should
25 grant summary judgment to Mars Petcare on Ms. Edgren's claims.  Alternatively, this Court should
26 grant summary judgment to Mars Petcare on Ms. Edgren's claims for injunctive relief because the
27 evidence shows she lacks standing to pursue such relief.
28

| | | |
|---|---|---|
| 1 | Dated: February 17, 2023 | Respectfully submitted, |
| 2 | | |
| 3 | | <u>/s/ Jeffrey E. Faucette</u><br>Jeffrey E. Faucette (State Bar No. 193066) |
| 4 | | SKAGGS FAUCETTE LLP<br>Four Embarcadero Center, Suite 1400 PMB #72 |
| 5 | | San Francisco, CA 94111<br>Telephone: (415) 295-1197 |
| 6 | | Facsimile: (888) 980-6547<br>E-mail: jeff@skaggsfaucette.com |
| 7 | | |
| 8 | | Stephen D. Raber (State Bar No. 121958)<br>Joseph S. Bushur (*pro hac vice*) |
| 9 | | Campbell E. Curry-Ledbetter (*pro hac vice*)<br>WILLIAMS & CONNOLLY LLP |
| 10 | | 680 Maine Avenue SW<br>Washington, D.C. 20024 |
| 11 | | Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029 |
| 12 | | E-mail: sraber@wc.com |
| 13 | | E-mail: jbushur@wc.com<br>E-mail: ccurry-ledbetter@wc.com |
| 14 | | |
| 15 | | *Attorneys for Defendant Mars Petcare US, Inc.* |