IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA MOORE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARS PETCARE US, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-07001-MMC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON CLAIMS FOR INJUNCTIVE RELIEF** |

By order filed March 28, 2023 (see Dkt. No. 250), the Court denied in part defendant Royal Canin U.S.A., Inc.'s ("Royal Canin") "Motion for Summary Judgment on Plaintiff Greta Ervin's Claims" (see Dkt. No. 222) and defendant Mars Petcare U.S., Inc.'s ("Mars") "Motion for Summary Judgment on Plaintiff Renee Edgren's Claims" (see Dkt. No. 223) (hereinafter, "Original Motions"), and deferred ruling on the question of available relief pending submission of supplemental briefing thereon. Now before the Court are Royal Canin's motion, filed April 21, 2023, "for Summary Judgment on Plaintiff Greta Ervin's Claims for Injunctive Relief" (see Dkt. No. 255), and Mars's motion, filed April 21, 2023, "for Summary Judgment on Plaintiff Renee Edgren's Claims for Injunctive Relief" (see Dkt. No. 256) (hereinafter, "Supplemental Motions"). Plaintiffs have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the Supplemental Motions, the Court deems the issues addressed therein suitable for resolution on the basis of the parties' respective written submissions, and rules as follows.

/ /

/ /

## BACKGROUND

Plaintiffs Greta Ervin ("Ervin") and Renee Edgren ("Edgren") are, respectively, current and former California residents who, at the time of such residency, purchased in California pet food manufactured by Royal Canin and Mars, respectively. Ervin purchased three Royal Canin Veterinary Diet products, namely, "GI Puppy," "Hydrolyzed Protein Diet," and "Selected Protein Adult Potato and Venison" (together, the "VD products"), for her French bulldog, Teddy, who suffered from gastrointestinal issues. (See Decl. of Joseph Bushur in Supp. of Royal Canin's Mot. Summ. J. on Pltf. Ervin's Claims ("Bushur Royal Canin Decl.") Ex. A ("Ervin Dep.") 45:11-16; 89:9-91:1, 92:16-93:18; 124:10-16, Dkt. No. 222-2.) Edgren purchased an Iams Veterinary Formula ("VF") product called "Veterinary Skin & Coat Plus Response KO" ("Iams KO") (together with VD products, the "Products") for her Maltese shih tzu, Barkley, who suffered from itchiness. (See Decl. of Joseph Bushur in Supp. of Mars's Mot. Summ. J. on Pltf. Edgren's Claims ("Bushur Mars Decl.") Ex. A ("Edgren Dep.") 54:4-56:5, 87:6-89:10, 128:10-129:2, Dkt. No. 223-2.)

Plaintiffs purchased the Products for their dogs at the recommendation of their veterinarians (see Ervin Dep. 66:7-16; Edgren Dep. 63:12-16), which recommendations plaintiffs understood to be "prescriptions" for the Products. In particular, Ervin testified the VD products were "called prescription dog food[s] when discussed with the vet" (see Ervin Dep. 15:22-23), and Edgren testified that her "vet prescribed" Iams KO to Barkley as part of his treatment plan (see Edgren Dep. 63:13). According to plaintiffs, the fact that the Products were "prescribed" to their pets, and could only be obtained with veterinary authorization (hereinafter, "Prescription Requirement"), led them to believe, incorrectly, that the Products contained drugs or medicine. (See Ervin Dep. 15:8-11, 16:10-20; Edgren Dep. 20:7-12, 115:17-25.)

Based on the above, plaintiffs assert, individually and on behalf of two putative

2

classes,[1] three state law causes of action, specifically, "Violation of California's Unfair Competition Law ('CA UCL') (Bus. & Prof. Code § 17200, et seq.)"; "Violation of California's False Advertising Law ('CA FAL') (Bus. & Prof. Code § 17500 et seq.)"; and "Violation of California's Consumer Legal Remedies Act ('CA CLRA') (Civil Code § 1750)."  (See Second Amended Class Action Complaint ("SAC") 70:19-21, 72:1-3, 73:9-11.)[2]

To the extent plaintiffs' claims are for injunctive relief,[3] plaintiffs request the Court "permanently enjoin" defendants from "requiring a 'prescription' or substantively equivalent 'veterinary authorization' for the sale of its 'prescription' pet food products unless they contain drugs or medicine," or, alternatively, issue an injunction requiring defendants to add the following disclaimer to the product labels: "THIS PRODUCT CONTAINS NO DRUG OR MEDICINE[;] NO PRESCRIPTION IS REQUIRED TO

---

[1] Ervin seeks to represent a California statewide class of "all California residents who purchased Royal Canin Prescription Pet Foods from any retailer in California," or, alternatively, a California statewide class of "all California residents who purchased Royal Canin Veterinary Diet Gastrointestinal Puppy dry food, Royal Canin Veterinary Diet Gastrointestinal Puppy wet food, Royal Canin Veterinary Diet Selected Protein Adult PV dry food, or Royal Canin Veterinary Diet Selected Protein Adult PV wet food from any retailer in California."  (See SAC ¶ 120.) Edgren seeks to represent a California statewide class of "all California residents who purchased Iams Prescription Pet Foods from any retailer in California," or, alternatively, a California statewide class of "all California residents who purchased Iams Veterinary Skin & Coat Plus Response KO dog food from any retailer in California."  (See SAC ¶ 121.)

[2] Although Mars, in briefing its Original Motion, argued Edgren, as a former California resident who "does not assert that [she] will make future purchases in California," cannot seek injunctive relief under the above-listed statutes (see Mars Reply in Supp. of Mot. Summ. J. on Pltf. Edgren's Claims 10:11-13, Dkt. No. 233), it has not pursued that argument in its Supplemental Motion, and, consequently, the Court does not address it herein, other than to note that, on summary judgment, the defendant bears the burden of showing the plaintiff is unable to present evidence sufficient to raise a triable issue, see Balarezo v. NTH Connect Telecom Inc., 2008 WL 552474, at *1 (N.D. Cal. Feb. 27, 2008) (holding moving party "bears the heavy burden of establishing beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (internal quotation and citation omitted)).

[3] Although plaintiffs purport to seek both damages and injunctive relief under the UCL and CLRA (see SAC ¶¶ 144, 156), "the remedies available in a UCL or FAL action are limited to injunctive relief and restitution," see In re Vioxx Class Cases, 180 Cal. App. 4th 116, 130 (2009).

PURCHASE THIS PRODUCT." (See Ervin Supp. Mem. Opposing Def. Royal Canin's Mot. Summ. J. as to Injunctive Relief ("Ervin Supp. Opp.") 2:2-8, Dkt. No. 258; Edgren Supp. Mem. Opposing Def. Mars's Mot. Summ. J. as to Injunctive Relief ("Edgren Supp. Opp.") 2:2-8, Dkt. No. 257)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. The moving party need not "produce evidence showing the absence of a genuine issue of material fact," but may discharge its burden simply by pointing out "that there is an absence of evidence to support the nonmoving party's case." See Celotex, 477 U.S. at 325. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See id. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

//

## DISCUSSION

By the instant motions, defendants argue they are entitled to summary judgment on plaintiffs' claims for injunctive relief because plaintiffs lack standing to seek such relief.

A district court has subject matter jurisdiction only where the plaintiff has "[s]tanding to sue" under Article III of the Constitution. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, (1) "the plaintiff must have suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and (3) "it must be likely ... that the injury will be redressed by a favorable decision." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation, citation, and alteration omitted). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, see id. at 561, and must make such a showing separately for each form of relief requested, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000).

For injunctive relief, the "threatened injury must be certainly impending to constitute [Article III] injury in fact" and "allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphases in original) (internal quotation and citation omitted). Further, where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

In Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," see id. at 969, and "provided two non-exclusive examples of how a previously deceived plaintiff could allege standing to seek injunctive relief" under such circumstances, see Hanscom v. Reynolds Consumer Prod. LLC, 2022 WL 591466, at *4 (N.D. Cal. Jan. 21, 2022). "In the first

instance, a plaintiff may plausibly allege they would want to purchase the product, but that they are unable to rely on the labels and so will refrain from purchasing a product they want." Id. (citing Davidson, 889 F.3d at 970-71).  "In the second example, a plaintiff might plausibly allege that they would purchase a product in the future, despite the fact it was once marred by false advertising or labeling, as they may reasonably, but incorrectly, assume the product was improved." Id. (citing Davidson, 889 F.3d at 971).  "In either example, in addition to alleging facts that demonstrate they are unable to rely on the advertising or labeling, a plaintiff must allege they would want to or intend to purchase the product in the future."  See id.; see also Davidson, 889 F.3d at 971 (finding plaintiff's "alleged harm is her inability to rely on the validity of the information advertised on [defendant's product] despite her desire to purchase" said product).

Here, defendants argue, plaintiffs lack standing to pursue injunctive relief because they have expressed "no desire" to purchase the pet food products at issue in the future (see Royal Canin Supp. Mem. in Supp. of Mot. Summ. J. on Pltf. Ervin's Claims for Injunctive Relief ("Royal Canin Supp. Mot.") 4:21-22, Dkt. No. 255; Mars Supp. Mem. in Supp. of Mot. Summ. J. on Pltf. Edgren's Claims for Injunctive Relief ("Mars Supp. Mot.") 6:11-12, Dkt. No. 256), and, in any event, "face[] no risk of being misled" by the Prescription Requirement if they do so (see Royal Canin Supp. Mot. 7:1-2; Mars Supp. Mot. 8:11-12).  Mars further asserts Edgren lacks standing to seek injunctive relief because Mars no longer sells its VF products, including Iams KO.  (See Mars Supp. Mot. 5:1-2.)  The Court addresses defendants' arguments in turn.

### A. Plaintiffs Lack Standing Because They Expressed No Desire to Purchase Prescription Pet Food in the Future

At the outset, defendants contend plaintiffs lack standing to seek injunctive relief because their "testimony shows that [they] do[] not desire to purchase" the Products in the future.  (See Royal Canin Supp. Mot. 5:22-23; Mars Supp. Mot. 7:14-15.)

In Davidson, the Ninth Circuit found the plaintiff therein, who challenged the defendant's allegedly false representations that its pre-moistened bathroom wipes were

1  "flushable," had "adequately alleged . . . an imminent or actual threat of future harm"
2  sufficient to confer standing to seek injunctive relief.  See Davidson, 889 F.3d at 970.  In
3  so finding, the Court emphasized said plaintiff had alleged her ongoing "desire[] to
4  purchase [defendant's] flushable wipes," and further noted "the [complaint] [was] devoid
5  of any grounds to discount" such allegation.  See id. at 971 (internal quotation and
6  citation omitted); see also Stover v. Experian Holdings, Inc., 978 F.3d 1082, 1088 (9th
7  Cir. 2020) (noting "Davidson . . . requires that the plaintiff desire to purchase the product")
8  (emphasis omitted); Johnson-Jack v. Health-Ade LLC, 587 F. Supp. 3d 957, 976 (N.D.
9  Cal. 2022) (finding plaintiffs "alleged an adequate basis to seek injunctive relief"; noting
10 plaintiffs "allege[d] that they want[ed] to purchase the product in the future).

11       Here, when asked at her deposition if there is "any chance that [she] would ever
12 buy any prescription diet pet food again," Ervin answered: "No.  No, not unless it were
13 definitely a different circumstance where there was an actual controlled drug in it, no."
14 (See Ervin Dep. 146:15-19.)  Similarly, Edgren, when asked the same question at her
15 deposition, answered: "Not if it's—not if there's no drug in it, no." (See Edgren Dep.
16 132:21-25.)

17       Plaintiffs argue their testimony, "viewed in the proper light, shows [they] want[] to
18 purchase prescription pet food if it contains drugs or medicine" to treat their dogs.  (See
19 Ervin Supp. Opp. 5:15-17; Edgren Supp. Opp. 6:2-4).  Such statements, however,
20 demonstrate, at most, a possibility, i.e., a "chance" plaintiffs would purchase a
21 reformulated version of the Products in the future, and, consequently, are insufficient to
22 establish plaintiffs' affirmative desire to purchase the Products again.  See Rugg v.
23 Johnson & Johnson, 2018 WL 3023493, at *7 (N.D. Cal. June 18, 2018) (finding plaintiff
24 lacked standing to seek injunctive relief with respect to labeling of defendant's product;
25 noting plaintiffs "[did] not allege an affirmative desire to buy [defendant's] products").  Put
26 another way, a statement that one will not buy a product as currently constituted is not a
27 statement that one will buy it if it is changed.  See, e.g., In re Coca Cola, 2021 WL
28 3878654, at *2 (noting "the imminent injury requirement is not met by alleging that . . .

plaintiffs would consider purchasing" defendant's product) (emphasis omitted).  Indeed, the statements here, given their degree of adamancy, evince plaintiffs' general inclination not to buy the Products, however formulated, rather than their intent to do so, and other parts of their deposition testimony confirm such disinterest.[4]  Cf. Davidson, 889 F.3d at 971 (noting plaintiff's complaint was "devoid of any grounds to discount [plaintiff's] stated intent to purchase [defendant's product] in the future") (internal quotation, citation, and alterations omitted).  Moreover, if plaintiffs did affirmatively desire to purchase the Products, they could have submitted declarations to that effect in support of their oppositions to the instant motions.

Accordingly, defendant is entitled to summary judgment on plaintiffs' claims for injunctive relief, there being no evidence that plaintiffs desire to purchase the Products in the future.

### B.     Plaintiffs Lack Standing Because They Will Not Be Misled in the Future

Defendants next argue that even if plaintiffs had established their intent to purchase defendants' prescription pet food products again, they would still lack standing to seek injunctive relief because "there is no possibility that [plaintiffs] would be misled by . . . [defendants'] prescription requirement[s] in the future."  (See Royal Canin Supp. Mot. 1:15-17; Mars Supp. Mot. 1:22-24.)  The Court, for the reasons set forth below, agrees.

As noted above, a previously deceived consumer's standing to seek injunctive relief as to an allegedly mislabeled product requires, in addition to a desire to purchase the product in the future, an ongoing "inability to rely on the validity of the information advertised" on the product.  See Davidson, 889 F.3d at 971.  "Where a plaintiff learns information during litigation that enables her to evaluate product claims and make

---

[4] For example, Ervin, when asked whether she "receive[d] any value from the Royal Canin foods that [she] bought" for her dog, responded: "Again, I go back to what it was supposed to have solved for him, and it didn't.  So would I have said it was a positive experience?  No.  Value?  No." (see Ervin Dep. 131:8-13), and Edgren, when asked whether she "ha[d] a positive experience with the Iams KO diet," testified she "didn't notice a difference" (see Edgren Dep. 92:9-11).

8

1  appropriate purchasing decisions going forward," injunctive relief "would serve no
2  meaningful purpose as to that plaintiff." See Jackson v. Gen. Mills, Inc., No. 2020 WL
3  5106652, at *5 (S.D. Cal. Aug. 28, 2020); see also Cordes v. Boulder Brands USA, Inc.,
4  2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (noting "Davidson, and the other cases
5  cited in that opinion, involved situations where the plaintiff could not easily discover
6  whether a previous misrepresentation had been cured without first buying the product at
7  issue")
8       Here, as defendants point out, plaintiffs have admitted they "now know[] that
9  references to prescription pet food are not representations that the food contains a drug
10 or medicine" and "therefore face[] no actual or imminent threat of relying to [their]
11 detriment on such references." (See Royal Canin Supp. Mot. at 7:26-8:1; Mars Supp.
12 Mot. 9:8-10 (internal quotations omitted); see also Decl. of Joseph Bushur in Supp. of
13 Royal Canin's Reply in Supp. of Mot. Summ. J. on Pltf. Ervin's Claims for Injunctive Relief
14 Ex. L, 3, Dkt. No. 268-1; Decl. of Joseph Bushur in Supp. of Mars's Reply in Supp. of
15 Mot. Summ. J. on Pltf. Edgren's Claims for Injunctive Relief Ex. J, 3, Dkt. No. 269-1.)
16 Moreover, to the extent plaintiffs encounter the Products in the future and remain unsure
17 as to whether they contain drugs or medicine, plaintiffs have conceded in their
18 depositions that they can make such a determination by looking at the label (see Ervin
19 Dep. 129:20-130:3; Edgren Dep. 121:7-10), looking up ingredients on Google (see Ervin
20 Dep. 130:7-8), or consulting their veterinarian (see Ervin Dep. 130:4-6).
21      In Davidson, the Ninth Circuit recognized there was no way to confirm whether the
22 labels' representation that the wipes were "flushable" other than to buy the product again
23 and test it by flushing. See Davidson, 889 F.3d at 971-72. Here, by contrast, plaintiffs,
24 "going forward," are able to "evaluate product claims and make appropriate purchasing
25 decisions" as to the Products, and, consequently, injunctive relief "would serve no
26 meaningful purpose." See Jackson, 2020 WL 5106652, at *5 (holding plaintiff allegedly
27 deceived by cereal box slack-fill lacked standing to seek injunctive relief "given that she
28 now kn[ew] she [could] ascertain the amount of cereal she is buying by looking at the

label"); see also, e.g., Fernandez v. Atkins Nutritionals, Inc., 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (holding plaintiff allegedly deceived by "net carbs" representation on product packaging lacked standing to seek injunctive relief; noting plaintiff "now kn[ew] how [defendant] goes about calculating its net carbs claims, and she [would] not be misled next time").

Plaintiffs, relying on this Court's recent order in Nacarino v. KSF Acquisition Corp., 2022 WL 17178688, at *3 (N.D. Cal. Nov. 23, 2022), argue they nevertheless "remain[] at risk of being misled by [defendants'] prescription requirement" (see Ervin Supp. Opp. 7:11-12; Edgren Supp. Opp. 7:23-24) unless they can "instantly" determine whether the Products contain medicine or drugs (see Ervin Supp. Opp. 8:21-9:1; Edgren Supp. Opp. 9:4-8). Nacarino, however, does not stand for the proposition that a plaintiff must be able to "instantly" audit a defendant's representation to avoid being misled by such representation in the future. Rather, as Royal Canin points out, "the Court's only use of the word 'instantly'" in Nacarino "was in quoting the [d]efendant's argument" and "did not purport to articulate a rule requiring the meaning of a representation to be 'instantly' determinable." (See Royal Canin Rep. in Supp. of Mot. Summ. J. on Pltf. Ervin's Claims for Injunctive Relief ("Royal Canin Supp. Rep.") 4:10-12, Dkt. No. 268.)[5]

Likewise unavailing is plaintiffs' argument that they "cannot be required to read the fine print ingredient list and research whether any unknown ingredients (or any combination of ingredients) is medicine" for which "a prescription is legally required."

---

[5] Here, although the ingredient lists contain a number of multi-syllabic words, almost all such words are classified for the consumer as either "vitamins" or "minerals." (See Bushur Royal Canin Decl. Exs. C, D, G, Dkt. Nos. 222-5, 222-6, 222-8; Bushur Mars Decl. Ex. D, Dkt. No 223-5.) Moreover, Google has a practice of prominently identifying, in a large, separate box to the right of the list of search results, substances for which prescriptions are required. See, e.g., Search Results for "Amoxicillin," Google (July 12, 2023), https://perma.cc/DJT4-5TEA (stating "Availability: Prescription needed"); see also Fed. R. Evid. 201; Schaeffer v. Gregory Vill. Partners, L.P., 105 F. Supp. 3d 951, 959 (N.D. Cal. 2015) (noting courts may "take judicial notice of facts that are not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction or because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned") (internal quotation and citation omitted).

(See Ervin Supp. Opp. at 8:18-20; Edgren Supp. Opp. 9:2-4.)  First, as to "read[ing] the fine print ingredient list," plaintiffs' reliance on Williams v. Gerber Prods., 552 F.3d 934 (9th Cir. 2008) is misplaced, in that the question addressed therein was not injunctive relief, but, rather, whether a defendant that misrepresents a product's content or other attribute on the front of a package can avoid liability by arguing the truth can be discerned by reading the list of ingredients on the back.  See e.g., Williams, 552 F.3d at 939 (holding "we do not think the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct [the] misrepresentation and provide a shield for liability for the deception").  Second, although a plaintiff who, post-purchase, becomes aware of a misleading representation on a product's label need not engage in a herculean effort to inform himself/herself as to any subsequent changes in said product's content, here, plaintiffs can, by using the essentially ubiquitous tool of Google, readily inform themselves as to the nature of any unfamiliar ingredient. [6]

Similarly unpersuasive is plaintiffs' argument that they cannot be expected to "uncover [defendants'] continued misrepresentations simply by asking [their] vet[s] whether any 'prescribed' food contains a drug or medicine" (see Ervin Supp. Opp. 9:12-15; Edgren Supp. Opp. 9:19-22), for the reason that, according to plaintiffs, "some veterinarians" are motivated to recommend prescription pet food because "their practice profits by or is paid [a] commission for selling" it (see Ervin Supp. Opp. 9:14-16; Edgren Supp. Opp. 9:21-23).  At the outset, the Court again notes that plaintiffs, by checking the ingredient list, have a readily available means of confirming the Products' content without the need to consult a veterinarian.  Moreover, although plaintiffs, relying on a single survey, have shown a small percentage of veterinarians have not accurately conveyed to their patients' owners the content of prescription pet food (see Decl. of Michael A. Kelly in

---

[6] The cases on which plaintiffs rely are distinguishable, in that they were decided on motions to dismiss, at which stage of the proceedings the district court was required to accept as true plaintiffs' allegations as to the degree of difficulty entailed in classifying the ingredients listed on the packaging at issue therein.

Supp. of Pltf. Ervin's Supp. Mem. Opposing Royal Canin's Mot. Summ. J. on Her Claim for Injunctive Relief Ex. N, ¶¶ 186-87, Tables 7-8, Dkt. No. 258-1), plaintiffs offer no evidence that plaintiffs themselves have ever received, or are likely to receive, such misinformation from their own veterinarians, and indeed, Ervin's veterinarian testified he is "not aware of . . . a medication being put into a food" and has "never indicated to a client that there was a medication in food." (See Bushur Royal Canin Decl. Ex. F 23:23-24:3, Dkt. No. 222-7.)

Accordingly, defendants are entitled to summary judgment on plaintiffs' claims for injunctive relief, for the additional reason that there is no triable issue as to whether plaintiffs will be misled by the Prescription Requirement in the future.

### C. Edgren Lacks Standing Because the Product She Purchased is No Longer Available

Lastly, Mars argues Edgren lacks standing to seek injunctive relief because Mars no longer sells VF products, including the Iams KO formula she purchased for Barkley. (See Mars Supp. Mot. 5:1-3.) In support thereof, Mars submits a declaration by its Vice President of Marketing for Pet Nutrition North America, in which said declarant avers that Mars "ceased the production of IAMS VETERINARY FORMULA products" in October 2016, approximately two months prior to the filing of the instant lawsuit, that it "permanently discontinued all IAMS VETERINARY FORMULA PRODUCTS" on January 1, 2017, and that it "does not intend to resume the manufacture or distribution of any IAMS VETERINARY FORMULA product" in the future. (See Decl. of Jean-Peal Jansen in Supp. of Mars's Mot. Summ. J. on Edgren's Claim for Injunctive Relief ¶¶ 4, 6, 8, Dkt. No. 256-2.)

In response, Edgren contends Mars did not actually cease selling the pet food she purchased for Barkley, and instead, "simply transferred its prescription 'KO' product from its Iams prescription brand to its Royal Canin prescription brand" (see Edgren Supp. Opp. 4:20, 4:27-5:1). In support thereof, Edgren asserts that Mars "simultaneously discontinued Iams prescription 'KO' product and started selling Royal Canin prescription

'Veterinary Diet' 'Selected Protein Adult KO,'" both of which "are formulated with kangaroo and oats and sold via prescription," and notes that Mars "even recommended that the 'new' Royal Canin 'KO' product be used in place of the Iams 'KO' product." (See Edgren Supp. Opp. 4:22-27.)[7]  The Court, for the reasons set forth below, is not persuaded.

Edgren's self-described "sleight of hand via brand-name switch" (see Edgren Supp. Opp. 5:3-4) theory, is, in essence, a claim that Mars can be held liable for the conduct of Royal Canin.  Mars, however, has submitted uncontroverted evidence that Mars is a "separate corporate entity" from Royal Canin.  (See Second Decl. of Jean-Paul Jansen in Supp. of Mars's Mot. Summ. J. on Edgren's Claim for Injunctive Relief ¶ 7, Dkt. No. 269-1; Decl. of Jean-Lin Pelatan in Supp. of Mars Mot. Summ J. on Edgren's Claims for Injunctive Relief ("Pelatan Decl.") ¶ 7, Dkt. No. 269-1.)  Further, to the extent Edgren may be arguing Mars and Royal Canin nevertheless should be considered one company, she has submitted no evidence to support such a finding, see Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A., 992 F.3d 893, 898 (9th Cir. 2021) (noting courts engage in a "fact-intensive inquiry" to determine whether veil-piercing claim survives summary judgment),[8] and, in any event, cannot raise such theory for the first time in

---

[7] Although the document Edgren cites for her assertion that Mars "recommended" Royal Canin's KO product, a publication titled "Canine Veterinary Transition Guide," lists "Suggested Royal Canin Veterinary Diet Formula" pet foods as potential replacements for discontinued Iams products, it notes "[s]uggested diets are used for the same conditions, but may differ in ingredients and nutrients."  (See Decl. of Michael Kelly in Supp. of Pltf. Edgren's Supp. Mem. Opposing Mars's Mot. Summ. J. on Her Claim for Injunctive Relief Ex. F, Dkt. No. 257-1.)

[8] Courts have used "a number of indicia . . . to determine whether to pierce the corporate veil," see Pacific Gulf Shipping, 992 F.3d at 898, including "(1) disregarding corporate formalities such as, for example, in issuing stock, electing directors, or keeping corporate records; (2) capitalization that is inadequate to ensure that the business can meet its obligations; (3) putting funds into or taking them out of the corporation for personal, not corporate, purposes; (4) overlap in ownership, directors, officers, and personnel; (5) shared office space, address, or contact information; (6) lack of discretion by the allegedly subservient entity; (7) dealings not at arms-length between the related entities; (8) the holding out by one entity that it is responsible for the debts of another entity; and (9) the use of one entity's property by another entity as its own," see id.

opposition to a motion for summary judgment, see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) (rejecting plaintiffs' request to proceed under unpled theory; noting "a new theory of liability at the summary judgment stage would prejudice [a] defendant who faces different burdens and defenses under [such] second theory of liability").

Lastly, even if Edgren had both pled and offered evidence sufficient to raise a triable issue as to Mars's liability for Royal Canin's sales, such showing would be to no avail, as Mars has submitted uncontroverted evidence that Royal Canin no longer sells the Veterinary Diet Selected Protein Adult KO product in the United States. (See Pelatan Decl. ¶ 4 (stating Royal Canin "has not sold Veterinary Diet Selected Protein Adult KO or any other pet foods containing kangaroo in California" since January 1, 2016, the date on which California "reinstated its ban on the sale of kangaroo products"); see also Pelatan Decl. ¶ 5 (stating Royal Canin, "[i]n June or July 2021 . . . discontinued sales of Veterinary Diet Selected Protein Adult KO in the United States" because of "difficulties with raw material supply and other manufacturing issues").)

Accordingly, Mars is entitled to summary judgment on Edgren's claims for injunctive relief, for the additional reason that there is no triable issue as to whether Edgren will be able to purchase either the Iams KO product she purchased for Barkley, or a similar Royal Canin product, in the future.

## CONCLUSION

For all of the multiple, alternative reasons stated above, defendants' motions for summary judgment are hereby GRANTED.

**IT IS SO ORDERED.**

Dated: July 12, 2023

MAXINE M. CHESNEY
United States District Judge